In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00114-CV


______________________________




SANDRA EARL VAIL KNOWLES, Appellant



V.



NEAL NOBLE, Appellee




 


On Appeal from the 71st Judicial District Court


 Harrison County, Texas


Trial Court No. 07-1140




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 Sandra Earl Vail and Neal Noble were divorced in Louisiana at a time when Noble's name
was Donald Neal Brown. (1) As a result of that divorce, Noble was ordered to pay Vail child support,
and he complied. In fact, over the years, Noble paid Vail too much. This appeal--from the trial
court's judgment dated July 31, 2008, in the amount of $43,214.19, the trial court found overpayment
plus interest--challenges both the jurisdiction of the trial court to render the judgment and the legal
and factual sufficiency of the evidence to support the judgment. (2)

 We reverse the judgment of the trial court in this case and remand this matter to that court
for further proceedings, based on our holdings that (1) the trial court had jurisdiction over the
petition for refund of overpayment of child support and (2) the evidence was legally sufficient but
factually insufficient to support the judgment for such overpayment.


(1) The Trial Court Had Jurisdiction Over the Petition for Refund of Overpayment of Child
Support


 Vail challenges the trial court's jurisdiction to hear this case. She couches her argument in
suggested application of the Texas Family Code statutes setting jurisdiction of Texas courts where
some of the parties reside outside of Texas or where the judgment affecting parent-child rights is
from another state. See, e.g., Tex. Fam. Code Ann. § 159.611 (Vernon Supp. 2008); § 159.613
(Vernon 2008). The petition filed by Noble was styled "Original Petition to Modify Child Support
Order." At the time of that petition, one of the children the subject of the parties' divorce order,
granted by a Louisiana court, was deceased, and the other over the age of eighteen. In the petition,
Noble alleged that the Louisiana court had found him liable for child support arrearages owed to Vail
in the amount of $26,115.00; that Louisiana order had been entered February 2, 1994. The only
modification sought was to determine how much Noble's monthly child support payments should
be; he also asked the trial court to find that he had actually satisfied all his arrearage obligations. We
observe that Texas statutes dealing with arrearages and payment of child support obligations are
addressed in SubChapter F, chapter 157, titled "Enforcement." And because there were no children
actually the subject of any modification that could have been made, we believe this action is more
accurately characterized as an enforcement action. The court must look to a motion's content rather
than its title to determine its nature. Tex. R. Civ. P. 71; In re B.O.G., 48 S.W.3d 312, 316 (Tex.
App.--Waco 2001, pet. denied); Wilson v. Kutler, 971 S.W.2d 557, 559 (Tex. App.--Dallas 1998,
no writ). None of the terms of the order are being modified. The dispute in this case merely
concerns whether the unmodified terms of the Louisiana judgment have been met. Because this is
an enforcement action, not a modification, the jurisdictional terms of Section 159.613 do not have
to be met. Section 159.610 provides:

 A tribunal of this state may enforce a child support order of another state registered
for purposes of modification in the same manner as if the order had been issued by
a tribunal of this state, but the registered order may be modified only if the
requirements of Section 159.611, 159.613, or 159.615 have been met.

Tex. Fam. Code Ann. § 159.610 (Vernon 2008). Thus, because this dispute concerns an
enforcement, not a modification, the trial court had jurisdiction.

(2) The Evidence Was Legally Sufficient but Factually Insufficient to Support the Judgment for
Such Overpayment


 The test for legal sufficiency of the evidence is "whether the evidence at trial would enable
reasonable and fair-minded people to reach the verdict under review." City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005). In making this determination, we credit favorable evidence if a
reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could
not. Id. So long as the evidence falls within the zone of reasonable disagreement, we may not
substitute our judgment for that of the fact-finder. Id. at 822. The trier of fact is the sole judge of the
credibility of the witnesses and the weight to give their testimony. Id. at 819. Although we consider
the evidence in a light most favorable to the challenged findings, indulging every reasonable
inference that supports them, we may not disregard evidence that allows only one inference. Id. at
822. Anything more than a scintilla of evidence is legally sufficient to support the finding. Cont'l
Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby, 935 S.W.2d
114, 118 (Tex. 1996). More than a scintilla of evidence exists if the evidence furnishes some
reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.
Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).

 When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must
consider and weigh all of the evidence, not just that evidence which supports the verdict. Ramsay
v. Tex. Trading Co., 254 S.W.3d 620, 625 (Tex. App.--Texarkana 2008, pet. denied) (citing
Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998)). In a factual sufficiency
review, a court of appeals considers and weighs all the evidence, and will set aside the verdict only
if the evidence is so weak or the finding is so against the great weight and preponderance of the
evidence that it is clearly wrong and unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.
1986); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). 

 The court of appeals is not a fact-finder. Accordingly, the court of appeals may not pass on
the witnesses' credibility or substitute its judgment for that of the fact-finder, even if the evidence
would clearly support a different result. Maritime Overseas Corp., 971 S.W.2d at 407. If we find
the evidence factually insufficient, we must clearly state why the evidence is insufficient to support
the finding or why the finding is so against the great weight and preponderance of the evidence as
to be manifestly unjust. Pool, 715 S.W.2d at 635. In so doing, we do not pass on the credibility of
the witnesses, and we do not substitute our opinion for the trier of fact, even if there is conflicting
evidence on which a different conclusion could be supported. Clancy v. Zale Corp., 705 S.W.2d
820, 826 (Tex. App.--Dallas 1986, writ ref'd n.r.e.).

 A hearing was held on July 11, 2008. Most of the hearing was focused on testimony from
Vail regarding various residences, including one in Monroe, Louisiana, where she said she had lived
off and on since 2003, and one in Baskin, Louisiana, where she received her mail. However, this
testimony is really relevant only to the bill of review, where Vail asserted she had not been properly
served with citation and sought to overturn the trial court's default judgment. 

 The instant appeal addresses the judgment entered by the trial court twenty days after the
hearing. That judgment made the following findings:


 "[A]s of September 1, 2004, [Noble] had paid all amounts due from him to [Vail] by virtue
of a judgment debt entered in Louisiana in 1993 and proceeded to make overpayment from
that time."
 Noble made "payments of $996.00 per month through December 2005 and $600.00 per
month thereafter through the month of June 2007" and thus "[Noble] overpaid [Vail]
$35,705.05."
 Noble was entitled to recover "pre-judgment interest on the sum of $25,705.05 from January
2006 through June of 2007 at the rate of 5% and . . . pre-judgment interest on the entire
amount of $35,707.05 from July 1, 2007 to August 1, 2008."


Finally, the trial court judgment awarded Noble judgment against Vail in the amount of $43,214.19. 
 At the only hearing held in this case, on July 11, 2008, most of the testimony was by Vail
about her residences and whether she had been served properly with Noble's petition to modify. The
following is the only piece of testimony about any arrearages or overpayment: 

 Q. [Noble's attorney]: Ms. Vail, this is a big stack of canceled checks and those sorts of
things that [Vail's attorney] gave me. This is your stack, right?

 A. [Vail]: Yes, sir.

 Q.: And do you agree that your - - that you agree that over this period of time, [Noble], my
client, has paid $90,189.17? 


 A.: Yes, sir.

 Q.: Toward this Louisiana judgment?

 A.: Yes, sir.

The record is unclear whether that "big stack of canceled checks" was ever admitted to evidence. 
The parties signed a stipulation that the checks were "admissible." But there is no indication they
were ever offered or admitted. After Vail's testimony, lunch loomed, and the trial court indicated
its intention of recessing for that meal. At the end of the hearing, the following exchange took place:

 [Noble's attorney]: . . . There are some additional payments made after the date of
judicial finding that we would like to present evidence on and then there is a small
bit of rebuttal evidence on the testimony of Mrs. Vail that she has given us today
from her son-in-law that has come here with great reluctance under --

 The Court: Why don't you go to lunch?

 [Vail's Attorney]: I am going to object to any testimony on the new lawsuit that he
is talking about additional arrearages. I will be completely honest with you, Judge,
he and I -

 

 The Court: I have got to go in there. They are starting. I paid $54 for that. That
is going to be my lunch. I don't know when that is over and you can check with them
and we will resume after lunch. 

The reporter's record, though, does not indicate whether any proceedings were held after lunch. 
Though Exhibit 20, consisting of numerous pay stubs, is contained in the reporter's record, the
exhibit index in that record does not report any place in the record reflecting its admission into
evidence, but instead states that Exhibit 20 was "marked after . . . hearing." 

 Vail's testimony that Brown paid $90,189.17 in child support payments offers some evidence
that he overpaid his child support obligation. This constitutes legally sufficient evidence to support
the trial court's award.

 Even if the pay stubs were in fact admitted into evidence, they suggest that $27,943.52 was
paid by Noble during the time period they cover, January 13, 2005, to June 15, 2007. Each pay stub
has an entry "CHLD S," which we assume indicates a child-support payment withheld from that
weekly wage payment and presumably paid over to Vail. Each pay stub reflects a weekly deduction
for "CHLD S" and a corresponding "Y-T-D" amount. The check stub dated June 15, 2007, reports
$3,272.01 paid for that year to date. The December 29, 2006, stub has a child-support year-to-date
entry of $7,338.38. The December 29, 2005, stub reports $17,333.13 in child support payments for
that year. These total $27,943.52 for the two calendar years 2005-06 and the first part of 2007. 
Even assuming the trial court's award of five percent interest, we do not see how this evidence could
support an award of $43,214.19.

 We point out, though, the trial court judgment does not mention a figure of $27,943.52. The
judgment states that after Noble satisfied his child support obligations in full "as of September 1,
2004," he continued to pay "$996.00 per month through December 2005 and $600.00 per month
thereafter through the month of June 2007" and thus Noble "overpaid [Vail] $35,705.05." By our
reckoning, however, the indicated language asserts that Noble paid $996.00 for sixteen months
(September 2004 through December 2005), which amounted to $15,936.00, and $600.00 for eighteen
months, yielding $10,800.00. These figures total $26,736.00. This is $8,969.05 less than the total
arrived at by the trial court for these months' overpayments.

 After making this finding, however, the trial court judgment states Noble was entitled to
recover "pre-judgment interest on the sum of $25,705.05 from January 2006 through June of 2007,
at the rate of five percent and . . . to recover pre-judgment interest on the entire amount of
$35,707.05 from July 1, 2007, to August 1, 2008." Although no explanation is given for the figure
of $25,705.05, this figure evidently comes from the holding in the trial court's default judgment
entered October 30, 2007, (3) where the trial court made a finding that "the total amount [Noble] should
have paid was $54,188.67 and the actual amount [Noble] actually paid was at least $79,893.72 by
December 31, 2005." Setting aside the qualifier "at least," the difference between $54,188.67 and
$79,893.72 is $25,705.05. (4) It appears this may be the genesis of this figure which is so prominent
in the parties' discussions and arguments.

 Even if we assume the figure $25,705.05 comes from the October default judgment, there
is no explanation for the trial court's adding an even $10,000.00 to that for "the entire amount of
$35,705.05." Further, even assuming a factually sufficient basis for these figures, the trial court's
five percent interest would not produce a total of $43,214.19.

 It is true that Vail agreed, at the hearing, that Noble paid $90,189.17 over a "period of time"
and that these monies were paid "[t]oward [the] Louisiana judgment." But there is nothing in the
record detailing how much of that $90,189.17 makes up the overpayments forming the basis for
Noble's suit. Further, the totals detailed above simply do not support the trial court's award of
$43,214.19. The evidence, while legally sufficient, is factually insufficient to support the trial court's
judgment. Cf. RePipe, Inc. v. Turpin, 275 S.W.3d 39, 48 (Tex. App.--Houston [14th Dist.] 2008,
no pet.) (some evidence of damage rendered evidence legally sufficient, but where evidence clearly
showed damages were $49,360.86 less than jury's award, evidence was factually insufficient); Ayala
v. Valderas, No. 2-07-134-CV, 2008 Tex. App. LEXIS 8042 (Tex. App.--Fort Worth Oct. 23, 2008,
no pet.) (evidence in conversion case factually insufficient where jury award reflected replacement
value of property, but legal standard in such cases was fair market value).




 We reverse the judgment of the trial court and remand this case to that court for further
proceedings in accordance with this opinion.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: August 19, 2009

Date Decided: October 16, 2009
1. In the briefing and even in the record, Vail's name is usually spelled "Vail." However, in
at least one order, and on the cover of her appellate brief, her name is spelled "Vale." Also, in
several locations, her former husband refers to her as Sandra Vail Knowles. Vail testified she was
engaged to a Mr. Knowles, but does not refer to herself with that surname. Her former husband is
referred to variously as Neal Noble or Donald Neal Brown. For the sake of simplicity and
consistency, we will refer to the parties as "Vail" and "Noble." 
2. In a companion appeal, our cause number 06-08-00113-CV, the same two parties, under
different names, dispute the validity of a default judgment for Noble dated October 30, 2007,
involving part of his overpayment. In that case, Vail challenges the trial court's denial of Vail's bill
of review which sought to overturn that default judgment. The appeal of that case is addressed in
our separate opinion of even date herewith. Vail appeals both cases in a single brief; we address the
two cases separately.
3. This default judgment is involved in our companion cause number 06-08-00113-CV. In that
proceeding, the default judgment was challenged by a bill of review, which was denied by the trial
court. By our opinion in that appeal, released contemporaneously with this opinion, we reverse that
decision by the trial court and remand that case for a new trial.
4. We note that the October 2007 default judgment did not award $25,705.05 to Noble, but
simply found that he had overpaid Vail by "at least" that amount.



N STYLE="text-decoration: underline">

 Again, the legal and factual sufficiency of the evidence are not independent grounds of error
in a case such as this, but are merely factors in assessing whether the trial court abused its discretion
in custody matters. L.M.M., 2005 WL 2094758, at *14; J.H.W., 2004 WL 1263254, at *2; Ferguson,
927 S.W.2d at 769. 

 We first consider only the evidence and inferences supporting the trial court's implied finding
that the children's present circumstances endangered their physical health or significantly impaired
their emotional development to determine if the evidence was legally sufficient to support the
judgment. Bradford, 48 S.W.3d at 754. During trial, Ward testified that Eastburn would allow the
children to play outside with no supervision, that they were not properly bathed and groomed, were
not fed well, and once had only an apple to eat all day. Ward claimed Eastburn would yell and cuss
in front of the children. Ward also stated she was denied access to the children during the
summertime. She also testified that Eastburn would drink and drive with the children in the car, and
that both Eastburn and his wife would drink with the children present. There was also evidence that
Eastburn had to pull a gun on his wife's ex-husband, who was threatening the wife. The director of
the learning center where the children attended day care testified that M.B.E. would act out, have
screaming fits, and would wet during naptime after visiting with Eastburn. Ward discussed the home
life in her new marriage and new home and claimed that the children were strongly bonded to their
stepfather, stepbrother, and other family that lived nearby. Finally, both Ward and Eastburn told the
trial court that if Ward would be awarded the right to choose the primary residence of the children,
Eastburn would move back to Texas to be close to them. Although the home study concluded that
both parties were good parents who had excellent parenting skills, it was recommended to the court
that Ward have primary care with visitation split between both parents if Eastburn would relocate
to Bowie County.

 Ward's testimony of the drunk driving, gun pulling, and lack of grooming and supervision
could furnish some reasonable basis for the conclusion that Eastburn endangered the children's
physical health. Testimony from the director of the learning center, Ward's statement regarding
Eastburn's yelling and cursing, and Eastburn's denial of access to Ward amounted to a scintilla of
evidence that the children's emotional development was being significantly impaired. See In re
A.C.S., 157 S.W.3d 9, 18 (Tex. App.--Waco 2004, no pet.) (testimony of denial of access was
evidence which "would support an allegation that the children's environment may 'significantly
impair [their] emotional development'"). Further, the trial court could have considered that removal
of the children from their stepfather, stepbrother, and other maternal family members could further
significantly impair their emotional well-being and that the best situation would be to follow the
home study recommendation in hopes that Eastburn would move to Texas. We conclude that the
evidence was at least legally sufficient to support the trial court's implied finding.

 Next, we review all the evidence to determine whether the implied finding was so contrary
to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust, shock the
conscience, or clearly demonstrate bias. Cain, 709 S.W.2d at 176; G.R.W., 191 S.W.3d at 899;
L.M.M., 2005 WL 2094758, at *14.

 The evidence in this case was contested and conflicting. Ward admitted she also cursed
around the children and restricted Eastburn's access to the children. Eastburn denied that he pulled
a gun on his wife's ex-husband. Both Eastburn and his mother testified that Ward drank in front of
the children, and also drove drunk. Eastburn claimed that Ward and her husband would smoke
around the children, who were allergic to smoke, and that Ward could not take care of the children
by herself. Eastburn, his mother, and sister all testified that Ward was jealous because Eastburn was
not paying her attention and that she decided to take the children back to Texas to teach him a lesson. 
When asked whether the children were in emotional or physical harm when left with Eastburn, Ward
said, "I assume so, yes," yet admitted to leaving the children with Eastburn for one week to fifteen
days while she went on vacation with her boyfriend. Finally, the person who conducted the home
study testified that nothing indicated the children were in physical or emotional danger while they
were in Eastburn's possession.

 Within its discretion, the trial court could have chosen to disbelieve the evidence favoring
Eastburn. Lide v. Lide, 116 S.W.3d 147, 151 (Tex. App.--El Paso 2003, no pet.) (fact-finder
determined weight to be given to testimony and is to resolve conflicts in evidence). When looking
at Ward's proof, we cannot say it was so weak or so overwhelmed by Eastburn's contrary proof such
that the judgment was manifestly wrong, unjust, or shocking to the conscience. Cain, 709 S.W.2d
at 176; Baker, 2004 WL 756622, at *3. Because there was factually sufficient evidence to support
its decision, we will not substitute our judgment for that of the trial court. L.M.M., 2005 WL
2094758, at *3; C.R.O., 96 S.W.3d at 447. Also, we cannot conclude that the trial court abused its
discretion or acted without reference to guiding rules and principles. (4) Eastburn's point of error is
overruled. (5)

 We affirm the trial court's order.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: June 1, 2009

Date Decided: July 17, 2009

 
1. A few factors may have been involved in this finding of changed circumstances:
(1) Eastburn and Ward had each remarried before the final hearing; (2) there was evidence by both
parties that the other parent cursed around the children or restricted access to the children; (3) both
parties had moved into different home surroundings with their new families; (4) there were
allegations of mistreatment by both parents; and (5) both parents were alleged to be improper persons
to exercise custody. A noncomprehensive list of material changes, as described by other courts, can
include  (1)  marriage  of  one  of  the  parties,  (2)  poisoning  of  the  child's  mind  by  one  of  the
parties, (3) change in the home surroundings, (4) mistreatment of the child by a parent or stepparent,
or (5) a parent's becoming an improper person to exercise custody. In re A.L.E., 279 S.W.3d 424,
428-29 (Tex. App.--Houston [14th Dist.] 2009, no pet.) (citing In re Marriage of Chandler, 914
S.W.2d 252, 254 (Tex. App.--Amarillo 1996, no writ); Wright v. Wright, 610 S.W.2d 553,555 (Tex.
Civ. App.--Houston [1st Dist.] 1980, no writ)). 
2. Completed home studies resulted in testimony that both parents were good parents, had
excellent parenting skills, and that the children were not in danger while they were in Eastburn's
possession.
3. Findings of fact "shall not be recited in a judgment," but are required to be filed separately. 
Tex. R. Civ. P. 299a. "The legislature made it clear in enacting the family code that, unless
expressly provided otherwise, suits affecting the parent-child relationship are to be governed by the
same rules of procedure as those generally applied to other civil cases." In re E.A.C., 162 S.W.3d
438, 442 (Tex. App.--Dallas 2005, no pet.) (citing Tex. Fam. Code Ann. § 109.002(a) (Vernon
2008)). "In the absence of a requirement that specific findings of fact be included in the trial court's
order, findings included in a judgment cannot form the basis of a claim on appeal." A.A.M., 2007
WL 1558701, at n.3 (citing Frommer v. Frommer, 981 S.W.2d 811, 813-14 (Tex. App.--Houston
[1st Dist.] 1998, pet. dism'd)). 
4. The trial court also found the parties' circumstances had materially and substantially
changed, perhaps because (1) Eastburn and Ward had remarried before the final hearing, (2) there
was evidence by both parties that the other parent cursed around the children or restricted access to
the children, (3) both parties had moved into different home surroundings with their new families,
(4) there was mistreatment by both parents, and (5) both parents were the improper person to
exercise custody. Eastburn did not challenge the legal or factual sufficiency involving this
determination or the determination that it was in the best interest of the children to have Ward
determine their primary residence. 
5. Eastburn also argues that the trial court's order violated the Uniform Child Custody and
Jurisdiction Act, even though he agreed to the trial court's jurisdiction, because it rewarded Ward's
"kidnapping" of the children and return to Texas in contravention of the divorce decree. Eastburn
recites that the purpose of the UCCJEA is to discourage and eliminate child snatching, avoid
jurisdictional competition and relitigation of custody decisions, and to promote cooperation among
the states to ensure custody decisions are rendered in the state that can better determine the best
interest of the children. "As a prerequisite to presenting a complaint for appellate review, the record
must show that . . . the trial court: (A) ruled on the request, objection, or motion, either expressly
or implicitly; or (B) refused to rule . . . and the complaining party objected to the refusal." Tex. R.
App. P. 33.1(a)(B). Nothing in the record indicates that this argument was presented to the trial
court. We overrule that point of error.