

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00043-CV
_____

TOM RAMSAY, Appellant

V.

TEXAS TRADING CO., INC., AND
ADM INVESTOR SERVICES, INC., Appellees

On Appeal from the 62nd Judicial District Court
Hopkins County, Texas
Trial Court No. CV37122

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss
Dissenting Opinion by Justice Carter

OPINION

Less than a half hour before the cattle-futures markets closed December 23, 2003, Tom Ramsay appeared at Texas Trading Company, Inc.'s Sulphur Springs office and wanted a personal account opened so he could sell "short" five cattle-futures contracts for his personal account through ADM Investor Services, Inc. (ADM), Texas Trading's clearing broker in Illinois. That is the scene Charles Dawson, the principal owner of Texas Trading, and his daughter (and then Texas Trading employee) Liz Harper described concerning that day. That day, Ramsay reportedly indicated that he did not have the time to sign an account agreement, so Harper reportedly delivered a form agreement to him as he left Texas Trading's office. Later, Harper signed the form agreement for Ramsay, though the testimony conflicts on whether he authorized that signature. Still later, pursuant to another term of the form agreement and after numerous Ramsay-initiated trades through the newly established account, Ramsay's position, at that time, was liquidated to cover existing losses. Ramsay lost a large sum of money.

At the heart of this case, filed by Ramsay, is whether an agreement between Ramsay, Texas Trading, and ADM was established based on the terms set out in that form and, if so, whether a forum selection clause in that agreement was enforceable.

In a narrowly focused jury trial—limited to just the question of whether Ramsay had authorized Harper to sign the agreement for him—the jury found the signature authorized. With that jury finding, the trial court dismissed the rest of the lawsuit on the basis that the agreement's forum-

2

selection clause allowed ADM to require any related litigation to occur in Illinois. Ramsay appeals, urging numerous issues.

We affirm the trial court's action because we hold (1) there was no abuse of discretion in holding a separate trial on Harper's authorization to sign for Ramsay, (2) there was no error in allowing ADM and Texas Trading to argue first and last in closing argument, (3) legally and factually sufficient evidence supports the jury's finding that the signature was authorized, and (4) the agreement's forum-selection clause is enforceable.

*(1)    There Was No Abuse of Discretion in Holding a Separate Trial on Harper's Authorization to Sign for Ramsay*

We first address the question of whether the trial court had the authority to bifurcate the proceeding and try the signing-authority issue separately.

Procedurally, ADM filed a motion to bifurcate trial to seek a jury determination of whether the allegedly forged signature was authorized by Ramsay. The trial court granted the motion, stating that the first phase of trial would decide whether Ramsay's signature was authorized.

This issue is controlled by Rule 174(b) of the Texas Rules of Civil Procedure:

> The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues.

TEX. R. CIV. P. 174(b). The rule is exceedingly broad. Although Ramsay argues that this constitutes an abuse of the trial court's discretion, we disagree based on the breadth of the rule. In an extensive

3

discussion of this rule, McDonald's Texas Civil Practice points out that the rule provides broad and real discretion to order separate trials of issues. *See* 3 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE 2d § 17.27 (2000).

> [W]e have said that the discretion to require severances and separate trials conferred on trial courts by this and other Rules is 'about as broad as language could make it'.

*Iley v. Hughes*, 158 Tex. 362, 311 S.W.2d 648, 650 (1958).[1]

Appellant attacks the trial court's determination based on "long standing policy and practice" against "piecemeal trials," which was also articulated by *Iley*. *See Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 47, n.29 (Tex. 1994). *Iley*, however, addressed the propriety of dividing the liability from the damages portions of lawsuits, and concluded that, based on long-standing policies of the state, and the desire to avoid a multiplicity of suits, the two should be tried together. Even so, there is a balance that must be struck between the ability to shorten the process and the need to avoid piecemeal trials.

The trial court's action in first hearing the authorization issue is a reasonable procedure suggested by the logical structure of the case. The issue of authorization was of considerable importance in determining a critical threshold issue: whether the contract was binding on Ramsay, and thus whether the contract's forum-selection clause could be considered for enforcement against him. Before the court could determine whether a valid forum-selection clause would require

---

[1]We note that the rule would not extend to authorizing separate trials of liability and damage issues in personal injury litigation. *See Iley*, 311 S.W.2d at 650; 3 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE 2d § 17.27.

4

dismissal of the remainder of the lawsuit, it would be necessary to determine whether that clause was part of an existing contract. Proceeding in this fashion allowed the trial court to avoid a full-blown trial on most of the issues that would not be effectively tried in Texas, if the contract and the forum-selection clause were enforceable. Had the jury come in with the opposite verdict, all involved would know how to proceed most advantageously with the remainder of the trial in Texas. This is the type of discretion contemplated by the rule. There was no error here.

*(2)*     *There Was No Error in Allowing ADM and Texas Trading to Argue First and Last in Closing Argument*

Ramsay also argues that, procedurally, the trial court erred by allowing Texas Trading and ADM to open and conclude closing arguments. Texas Trading and ADM had asked to be placed in that position for presentation of evidence, but the court had declined to do so, based on the untimeliness of the motion. After evidence was presented, however, the court changed its mind and allowed ADM and Texas Trading to argue first and last during closing arguments.

This is an issue resolved by reading two rules together. It is true that Rule 266 says the plaintiff has the right to open and conclude both evidence and argument unless the burden of the whole case rests on the defendant. Rule 266 opens, however, with the phrase "except as provided in Rule 269."

Rule 269(a) of the Texas Rules of Civil Procedure states that the party having the burden of proof on all matters submitted to the jury is entitled to open and conclude the argument. *See* TEX. R. APP. P. 269(a).

5

In this case, Texas Trading and ADM had the burden of proof on all matters submitted by the charge. Thus, under the rule, they had the right to open and conclude argument. There was no error here.

*(3)    Legally and Factually Sufficient Evidence Supports the Jury's Finding That the Signature Was Authorized*

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id*. So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the fact-finder. *Id*. at 822. The trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id*. at 819. Although we consider the evidence in a light most favorable to the challenged findings, indulging every reasonable inference that supports them, we may not disregard evidence that allows only one inference. *Id*. at 822.

When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.* at 407; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The court of appeals is not a fact-finder. As stated above, we may not pass on the witnesses' credibility or substitute our

judgment for that of the jury, even if the evidence would clearly support a different result. *Ellis*, 971 S.W.2d at 407.

There was evidence that company policy required personal signing of the agreement, and Ramsay repeatedly testified that he did not authorize anyone to sign on his behalf. Liz Harper agreed that an authorization to sign on another's behalf should also be obtained in writing, but testified that she did sign on Ramsay's behalf. She testified that he had been in a hurry to open an account so that he could profit from a trading opportunity personally and not make that trade in an existing joint account he shared with another customer. She testified in detail that Ramsay had come in very late in the trading day; that he wanted the personal account immediately; that Ramsay indicated a lack of time to stay and sign account papers; that she handed him a form agreement for him to take with him; and that, as he was walking out the door, he asked her to fill the papers out and sign his name to them. Several days later, Ramsay called and asked her if the account had been opened. Harper told him that it could not have been because he had not returned the account papers. Ramsay's response, according to Harper, was to display irritation and to say "that he had already told me to sign it and to just get it open." Harper continued that, when she explained a second time that Ramsay would need to come in and sign the application, he responded by saying he did not see how he could get to town. "He said just go ahead and sign my name. I've already told you twice. Just sign them." She testified that she ultimately did fill out and sign the account papers as Ramsay directed her.

The evidence presented to the jury was in conflict. The jury made a determination, and both legally and factually sufficient evidence supports its decision.

*(4)    The Agreement's Forum-Selection Clause Is Enforceable*

The most challenging issue in this appeal is presented by the forum-selection clause contained in paragraph 19 of the agreement:

> All actions or proceedings arising direction, indirectly or otherwise, in connection with, out of, related to, or from this agreement or any transaction covered hereby, shall be governed by the law of Illinois and may, at the discretion and election of [ADM], be litigated in a court whose situs is within Illinois.

Ramsay assails the clause, arguing that it really is a venue-selection clause that is unenforceable as against public policy, that the clause did not provide for exclusive jurisdiction in Illinois, and that the clause's placement of discretion in ADM was fatal to its enforceability.[2]

A motion to dismiss is the proper procedural mechanism for enforcing a forum-selection clause that a party to the agreement has violated in filing suit. *See In re AIU Ins. Co.*, 148 S.W.3d 109, 111–21 (Tex. 2004); *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 610 (Tex. App.—Houston [1st Dist.] 2005, no pet.). We review the trial court's granting of such a motion for an abuse of discretion. *See Phoenix Network Techs. (Europe) Ltd.*, 177 S.W.3d at 610. To the extent that our review involves the construction or interpretation of an unambiguous contract,

---

[2]Ramsay also attacks the clause on the basis that he did not sign the agreement. But, as sufficient evidence supported the jury's determination that the agreement was signed with Ramsay's authorization, that argument fails here.

however, the standard of review is de novo. *See id.*; *Deep Water Slender Wells, Ltd. v. Shell Int'l Exploration & Prod., Inc.*, 234 S.W.3d 679, 687 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

In the present case, interpretation and enforceability of the forum-selection clause are the issues presented on appeal, and are legal matters this Court reviews de novo. *Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994); *CMS Partners, Ltd. v. Plumrose USA, Inc.*, 101 S.W.3d 730, 737 (Tex. App.—Texarkana 2003, no pet.).

We construe a contract containing a forum-selection clause as we do any contract, according to its plain language. *See Phoenix Network Techs. (Europe) Ltd.*, 177 S.W.3d at 615. If a contract is worded so that it can be given a certain or definite legal meaning or interpretation, we will construe the contract as a matter of law. *Enter. Leasing Co. v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004).

*a.     A Venue-Selection Clause?*

Ramsay contends that this is not a *forum*-selection clause, but that it is instead a *venue*-selection clause. He fails to persuade us, however, how the distinction makes any difference here. A forum, as defined, is a place where a case may be heard by a court. Venue, as defined by the common law, is the proper place for a lawsuit to proceed. In this context, the two concepts are effectively interchangeable. *See* BLACK'S LAW DICTIONARY 680, 1591 (8th ed. 2004). By defining a proper forum, where the action may proceed, the clause also determines the proper venue for the action. Black's defines a forum-selection clause in nearly precisely those terms: "a contractual

9

provision in which the parties establish the place (such as the country, state, or type of court) for specified litigation between them." *Id.* at 681.[3]

Ramsay directs our attention to *Fleming v. Ahumada*, 193 S.W.3d 704 (Tex. App.—Corpus Christi 2006, no pet.), as authority for the suggestion that a venue provision cannot be the subject of a private contract unless provided by statute. That is correct, but, those cases are in the context of state venue provisions that set out which court (county) within this state has authority to hear a particular case, with agreements setting venue in an improper location. This clause does not purport to move venue from a proper to an improper location, but instead specifies the forum in which a case will be heard, presumably in accordance with the "venue rules" of that forum.[4]

The Corpus Christi court has recently been confronted with the same argument and found it to be without merit. *In re Great Lakes Dredge & Dock Co. L.L.C.*, No. 13-07-437-CV,

_____

[3]*See CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 892 (Tex. App.—Dallas 2007, pet. denied) (forum-selection clause "designates Texas as the venue and exclusive jurisdiction for lawsuits"; *see also Tri-State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 249 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (clause used term "venue" rather than "forum").

[4]We also recognize that a case from this Court, *Busse v. Pacific Cattle Feeding Fund #1, Ltd.*, 896 S.W.2d 807, 812–13 (Tex. App.—Texarkana 1995, pet. denied), reviewed a forum-selection clause stating that venue would lie in one of selected Iowa counties. The meaning was clear, even if the language could have been more carefully selected.

2008 WL 100505, at *3 (Tex. App.—Corpus Christi Jan. 10, 2008, orig. proceeding), discusses

differences between the two terms as used in Texas.[5]

> "Forum" generally refers to a sovereign or a state.  *See Scott v. Gallagher*, 209 S.W.3d 262, 264 (Tex. App.—Houston [1st Dist.] 2006, no pet.)  ("[V]enue 'refers to the propriety of prosecuting, in a particular form, a suit on a given subject matter with specific parties, over which the forum must, necessarily, have subject-matter jurisdiction.'") (emphasis added).  In contrast, "[a]t common law, 'venue' meant 'the neighborhood, place, or county in which the injury is declared to have been done or in fact declared to have happened.'" *State v. Blankenship*, 170 S.W.3d 676, 681 (Tex. App.—Austin 2005, pet. ref'd) (quoting BLACK'S LAW DICTIONARY 1557 (6th ed. 1991)).  In Texas, "venue" refers to the county in which suit is proper within the forum state.  *Accelerated Christian Educ., Inc.*, 925 S.W.2d at 73; *Estrada v. State*, 148 S.W.3d 506, 508 (Tex. App.—El Paso 2004, no pet.).  Thus, a "forum"-selection agreement is one that chooses another state or sovereign as the location for trial, whereas a "venue"-selection agreement chooses a particular county or court within that state or sovereign.

Forum-selection clauses may be so broad as to require a case to be heard in a particular

country[6] or state (as in this case).  To suggest that this clause improperly chooses a venue in

contravention of controlling law misreads the concept.

---

[5]As noted there, the terms, although overlapping, also have distinct legal meanings in certain contexts, although those niceties have not been consistently observed in the reported cases.

[6]A clause stating that any suits would be taken in the United Kingdom found sufficient—although it did not specify which of the various subdivisions of the UK was to be the site of any suit.  *Phoenix Network Techs. (Europe) Ltd.*, 177 S.W.3d at 619.

### b.     A One-Way Clause?

Ramsay argues that, because this clause is not mandatory as to both parties under all circumstances, it is not enforceable.[7]  Of the arguments raised, this one has the most viability.  He relies most directly on language found in a footnote in *Phoenix Network Technologies (Europe) Ltd.*, which states:

> The other threshold matter required by the Texas courts-of-appeals test—that the proponent show that the parties contractually agreed on an exclusive forum—adds nothing to the *M/S Bremen* and *Shute* test and is consistent with it.  If the parties have not agreed to an exclusive forum, then the clause to which they agreed is not a forum-selection clause in the first place.

*See* 177 S.W.3d 605, 624, n.6.  In this argument, Ramsay addresses (what was until 2004) a fairly unsettled area of the law.  He argues that, because the clause does not contain language requiring both parties, in all circumstances, to file suit only in a particular forum, it is not a mandatory agreement to have the case heard in a particular forum; thus, it is not a valid forum-selection clause.

Formerly, forum-selection clauses were enforceable in Texas based on a determination of whether (1) the parties had contractually consented to submit to the exclusive jurisdiction of another state, and (2) the other state recognized the validity of such provisions.  *CMS Partners, Ltd.*, 101 S.W.3d at 732; *Sw. Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324 (Tex. App.—Austin 1999, pet. denied); *Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66, 70 (Tex. App.—Dallas 1996, no writ).

---

[7]The cases discuss several fashions in which a clause may be inadequate, of which the most common by far is the situation where the proposed forum is not adequately defined.

In a series of recent cases, the Texas Supreme Court has reconsidered the appropriate review to determine whether forum-selection clauses should be enforced. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 793 (Tex. 2005); *In re Automated Collection Techs., Inc.*, 156 S.W.3d 557, 559 (Tex. 2004); *AIU Ins. Co.*, 148 S.W.3d 109. As a result, enforcement of forum-selection clauses is mandatory unless the party opposing enforcement "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Automated Collection Techs., Inc.*, 156 S.W.3d at 559; *see Holten*, 168 S.W.3d at 793; *AIU*, 148 S.W.3d at 112; *Boyes v. Morris Polich & Purdy, L.L.P.*, 169 S.W.3d 448, 458 (Tex. App.—El Paso 2005, no pet.).[8]

In *AIU*, the court held that enforcement of forum-selection clauses is mandatory unless the party opposing enforcement "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *AIU Ins. Co.*, 148 S.W.3d 109. In *Automated Collection Technologies*, the court recognized the possibility that, in some circumstances, the clause might be invalid and unenforceable, but did not explain what might cause such invalidity. *See Automated Collection Techs., Inc.*, 156 S.W.3d at 559.

---

[8]Enforcement of a forum-selection clause would be unreasonable and unjust if (1) enforcement of the clause would contravene a strong public policy of the forum in which suit was filed or (2) the balance of convenience is strongly in favor of litigation in the forum in which suit was filed, and litigation in the forum identified in the clause would be so manifestly and gravely inconvenient to the resisting party that the resisting party effectively would be deprived of a meaningful day in court. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 19 (1972); *AIU Ins. Co.*, 148 S.W.3d at 111–12; *Deep Water Slender Wells, Ltd.*, 234 S.W.3d at 693.

Under the earlier cases, it was recognized that such clauses are valid if contractually agreed to by the parties, and that would seem to remain a necessary adjunct to our determination. *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200, 203 (Tex. App—Eastland 2001, pet. denied); *Sw. Intelecom, Inc.*, 997 S.W.2d at 324; *Accelerated Christian Educ., Inc.*, 925 S.W.2d at 70.

Ramsay does not suggest that the subject matter of the underlying lawsuit is outside the scope of the agreement or that it cannot be determined which forum is named. The issue raised is whether this language requires litigation to proceed in that forum—because it leaves discretion to ADM to decide whether to litigate in Illinois. The fact that the clause might be enforced at the election of ADM, however, is not a matter that has not previously, in isolation, been considered a controlling question. There are reported cases in which similar language has been enforced without qualm or comment by the courts.

An example of this type of language is found in *Accelerated Christian Educ., Inc.*, 925 S.W.2d at 69, 70–71. In that case, the court considered the following forum-selection clause and found it sufficient to require suit to proceed as chosen under the clause.

> [I]f [Accelerated] brings the action, it shall be instituted in one of the courts specified in subparagraph (a) above. Oracle may institute legal action in any appropriate jurisdiction.

The clause thus allowed one party, at its election, to choose one of several courts in which to begin litigation, while allowing the other party to institute action wherever "appropriate." That clause

14

provided a far greater degree of discretion than allowed in the contract clause in this case, but was nevertheless treated as mandatory and enforceable.

    *c.*     *Permissive Forum?*

The clause states that "all actions or proceedings . . . shall be governed by the law of Illinois and may, at the discretion and election of ADM, be litigated in a court . . . within Illinois." Does this provide only an additional location where litigation might proceed, perhaps in a situation where the forum might not otherwise be available, rather than a mandatory requirement? Or does it mean that ADM may choose to require litigation to proceed in Illinois, making such choice binding?

One might attempt to understand this provision as a "permissive forum selection clause," under which the parties thereby consent to the jurisdiction of a particular forum but do not require the parties to file suit or litigate there. The phrase "permissive forum selection clause" appears to have been coined, defined, and first used in Texas in a law review article. *See* Paul Hartman Cross and Hubert Oxford, IV, "FLOATING" FORUM SELECTION AND CHOICE OF LAW CLAUSES, 48 S. Tex. L. Rev. 125 (2006). The phrase seemed to grow out of an effort to distinguish permissive from mandatory clauses, "which provide that all litigation must, shall, or is to be filed in that forum." *Id.* at 131.

The only case cited to support this concept is *Southwest Intelecom, Inc.*, 997 S.W.2d 322. In that case, the court summarized three cases, *Accelerated Christian Education*, *Greenwood*, and *Barnett*, each of which contained absolute command language that any legal action would be brought

or instituted in a stated forum or court. In *Southwest Intelecom*, though, the Austin court reviewed a clause that read as follows:

> 8.9  Applicable Law.
> This Agreement shall be governed by the laws of the State of Minnesota. The Parties stipulate to jurisdiction and venue in Ramsey County, Minnesota, as if this Agreement were executed in Minnesota.

In its analysis, the Austin court focused on the fact that the clause mandated which law would apply and that the parties stipulated only that jurisdiction and venue in the named forum were proper. The court used the dictionary definition of "stipulate" to determine that the parties' intent was to "arrange or settle definitely" that jurisdiction was proper and available in Minnesota and that the provision merely "settle[d] any question of whether the courts of that state have jurisdiction." *Id.* at 326. Thus, the court concluded, the clause did not provide Minnesota courts with exclusive jurisdiction to hear all disputes arising from the agreement, and declined to find the clause to be mandatory.[9]

A similarly imprecise clause is discussed in *Mabon Ltd. v. Afri-Carib Enterprises, Inc.*, 29 S.W.3d 291, 297 (Tex. App.—Houston [14th Dist.] 2000, no pet.):

> It is also agreed between the parties [that] because of the multi-state and multi-country jurisdiction involved due to the locations of the principals, banks and depositories, etc., the laws of . . . Nigeria will apply and the Federal District of Nigeria shall have venue.

---

[9]Another case cited in the article, *My Café CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 866 (Tex. App.—Dallas 2003, no pet.), is inapposite. The focus there was whether the clause encompassed all causes of action relating to the agreement.

The court compared this clause to those in several federal cases and concluded that, just because the clause said that a court had venue, it did not exclude the possibility of another forum also being proper. The court used the reasoning of *Southwest Intelecom*, concluding that, without explicit language providing for exclusive jurisdiction in Nigeria, the parties did not contractually consent to submit to exclusive jurisdiction in Nigeria.

In examining this particular clause to determine its meaning, we must consider several factors and apply applicable tests.

> If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. A contract, however, is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. Whether a contract is ambiguous is a question of law for the court to decide by looking at the circumstances present when the contract was entered. When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue.

*Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex. 1983).

Obviously, since the contract was on a form provided by ADM, ADM is responsible for its wording. We acknowledge the long-standing general rule that, where an instrument is open to two reasonable constructions, it will be construed against its author. *Houston Pipe Line Co. v. Dwyer*, 374 S.W.2d 662, 665 (Tex. 1964); *Universal C. I. T. Credit Corp. v. Daniel*, 243 S.W.2d 154 (Tex. 1951). That rule applies, however, only where, after the ordinary rules of interpretation have been applied, the agreement remains ambiguous. *Daniel*, 243 S.W.2d at 157. The primary goal in

17

construing the meaning of a contract is to ascertain and give effect to the parties' intent as expressed in the contract. *See Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983).

We also consider another legal maxim: "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003), *citing Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex. 1962); *Citizens Nat'l Bank v. Tex. & P. Ry. Co.*, 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941).

The real question here is whether Ramsay contracted to allow ADM to choose whether any lawsuit between them would proceed in Illinois. To answer that question, we consider that the contract was drafted by ADM and not by Ramsay, we accept our responsibility to construe an unambiguous contract, and we look at the entire sentence (not just the word "may"). When we do those things, we come to an inescapable conclusion: Ramsay did contract to give ADM that choice. The language allows ADM to require the litigation of any action to proceed solely in Illinois. Despite Ramsay's suggestions otherwise, he has provided us with no authority suggesting that this type of discretion in one party renders the clause invalid or unenforceable.

We agree that the use of the word "may" in this clause, while intending mandatory effect, is unfortunate. The word ordinarily suggests a conditional or possible result rather than a mandatory one. Although we agree that the word "may" makes interpretation of this clause challenging, we find from the context that the parties intended to make the forum mandatory once ADM made its

18

choice.[10]  Otherwise, the words giving ADM discretion to choose would mean nothing.  In this context, the term "mandatory" does not exclude the ability to contract for discretion in one party, which, if exercised, would make the provision mandatory on others to the contract.

Reading the clause as a whole, we conclude it provides ADM with the discretion to decide whether litigation must proceed in a court in Illinois.  The agreement allows ADM to decide whether it would allow litigation to proceed in Texas, in this case, or to require it to proceed in Illinois.[11]  The clause covers all litigation.  We hold that it is a forum-selection clause adequate to support the trial court's decision to dismiss the litigation in Texas.[12]

Under the controlling precedents on forum-selection clauses, the parties' bargained-for agreement merits judicial respect.  This dispute should be heard in Illinois, as chosen by ADM, pursuant to the contract between the parties.  *See In re AutoNation, Inc.*, 228 S.W.3d 663, 669 (Tex. 2007).

---

[10]We also note that any question of whether ADM waived that right by its action or inaction is not an issue before us in this case.

[11]We also note that, according to the pleadings, ADM's principal place of business is in Illinois, and there is no suggestion that the forum itself would fit within the limitations placed on forum-selection clauses on the ground that it was somehow unreasonable or unjust on that basis.

[12]Ramsay also briefly argues that the clause was unenforceable because of overreaching by Texas Trading and ADM, but that is based on alleged wrongdoing by them and alleged lack of evidence to show that Ramsay's signature was authorized.  As we have found, sufficient evidence supports that conclusion regarding Ramsay's signature.  Overreaching is not shown.

We affirm the judgment of the trial court.

Josh R. Morriss, III
Chief Justice

DISSENTING OPINION

Because I believe the forum-selection clause is permissive and not mandatory, I dissent to the majority opinion. The clause states that "all actions or proceedings . . . shall be governed by the law of Illinois and may, at the discretion and election of ADM, be litigated in a court . . . within Illinois." Does this language necessarily mean that all litigation between these parties was required to be conducted in Illinois? Or does this mean that Illinois "may" be selected by ADM as a place of proper jurisdiction?

The difficulty with the majority opinion is the attempt to explain that "may" really means "shall." One entering this contract with full knowledge that the contract was entered in Texas, Ramsay was a Texas resident, all transactions would be made through the local office in Texas, the corporations were licensed to do business in Texas, would properly believe that, if litigation resulted from this contract, jurisdiction of the litigation would necessarily lie in Texas. Illinois appears to have no significant contacts other than ADM's location. Further, one could logically believe that entering the contract in question gave ADM a right that it would not otherwise have—it could no longer argue that Illinois did not have jurisdiction in the event ADM elected to file suit there.

Consequently, the clause was not meaningless. The fact that the parties agree that litigation between them may, if elected by ADM, be conducted in Illinois does not place the parties on notice that no other state has jurisdiction of their litigation.

I believe this case is similar to *Southwest Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322 (Tex. App.—Austin 1999, pet. denied), where the parties stipulated "to jurisdiction" in Minnesota. Just as the majority opinion states here, in *Southwest Intelecom, Inc.*, the trial court interpreted the jurisdiction clause to provide for exclusive jurisdiction in Minnesota courts "because the provision would be meaningless . . ." *Id.* at 326. But the Austin court held that interpreting the provision to mean that both parties agreed to jurisdiction and venue in Minnesota (but not exclusively) enabled the appellee to sue in its headquarters state without worrying about jurisdictional issues. Without the jurisdiction clause, it was doubtful that a Minnesota court would have been unable to exercise jurisdiction since that state had little contact.

I believe this clause is similar to that in *Southwest Intelecom, Inc.*, and should be interpreted as providing permissive, not exclusive, jurisdiction in Illinois. For these reasons, I respectfully dissent to the majority opinion.


                                        Jack Carter
                                        Justice


Date Submitted:     April 2, 2008
Date Decided:       May 5, 2008