In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00135-CV

                                                ______________________________

 

 

                     DALE LEANDER AND DON LEANDER,
Appellants

 

                                                                V.

 

                   FIN & FEATHER CLUB, AND THROUGH TRUSTEE, 

                                       KENNETH PARTEN, Appellees

 

 

                                                                                                  


 

 

                                       On Appeal from the 336th
Judicial District Court

                                                             Fannin County, Texas

                                                            Trial
Court No. 37293

 

                                                                                                  


 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            Brothers
Dale and Don Leander have had a falling out with the Fin & Feather Club, of
which they have been members at some point over the last few years and which
Club is located on some 162 acres of Fannin County land.  After the initial falling out, Dale and Don
stopped doing various activities connected with the Club, including payment of
various dues and fines, for which the Club ultimately sued them and obtained a
judgment against the brothers.

            The Club was
originally established in 1912.  The
Club, located in Fannin County, purports to be an unincorporated association of
individuals.[1]  In October 1992, Club shareholders  met to establish rules and regulations
concerning the Club’s operation.  Present
at the meeting were owners of twelve of the thirteen ownership “shares” in the
Club.[2]  Among those present were Dale, who was
elected assistant trustee, and Ken, who was elected trustee.[3]  Club rules and regulations were adopted and
signed by all present.  

            After the
difference of opinion in late 1994, apparently with Ken, Dale resigned his
position as assistant trustee.  After
Dale’s resignation, both Dale and Don allegedly ceased to pay Club dues or
further participate in Club affairs.[4]  As a result, the Club, through its trustee,
filed a lawsuit against Dale and Don to collect dues, late fees, “special call”
dues, “no show” fines for work days, and fines for “chronic non pay
dues/rules.”  After a purportedly
abbreviated bench trial, judgment was rendered against Dale in the amount of
$26,778.00 and against Don in the amount of $10,960.00.[5]  

            In eight
points of error, Dale and Don assert on appeal that the evidence is factually
and legally insufficient to support the findings that Dale and Don breached the
agreement, that admitting into evidence the Club’s damage summary exhibit was
reversible error, and that the evidence is factually and legally insufficient
to support the amount of the damage finding against Dale and Don.  We affirm in part, but reverse the damage
award and remand to the trial court for further proceedings, based on our
holdings that (1) breach of contract by Dale and Don was adequately
established, (2) admitting the damage summary was not reversible error, and (3) evidence
is insufficient to support the amount of the recoveries against Dale and Don.

(1)        Breach of Contract by Dale and Don Was
Adequately Established

 

            Using various
approaches, Dale and Don attack the finding that they breached the contract
among the Club’s owners.  Dale and Don
contend (i) the agreement on which pleadings were filed fails to support the
trial court’s finding of breach or damages, (ii) the evidence is insufficient
to establish a breach of contract, (iii) Dale and Don did not own any interest
in the Club during the time period for which the trial court awarded damages,
(iv) there is no evidence, or insufficient evidence, to support the trial
court’s findings of fact regarding Dale’s alleged breach, and (v) there is no
evidence, or insufficient evidence, to support the trial court’s findings of
fact regarding Don’s alleged breach.

            Our overall
holding that breach of contract was adequately established is supported by
these intermediate holdings:  (A) the action
for breach of contract was sufficiently pled, (B) amendments to the contract
were proven by oral testimony, and (C) sufficient evidence showed breach of the
amended contract by Dale and Don.

            (A)       The
Action for Breach of Contract Was Sufficiently Pled

 

            To establish a breach of contract, a party must
present evidence of the existence of a valid contract, the party’s compliance
with the terms of the contract, a breach of the contract by the defendant, and
damages to the plaintiff resulting from the breach.  Taub v.
Houston Pipeline Co., 75 S.W.3d 606, 615 (Tex. App.—Texarkana 2002, pet.
denied).  Appellate review of the trial
court’s construction of an unambiguous agreement is de novo.  J. M.
Davidson, Inc. v. Webster, 128
S.W.3d 223, 229 (Tex. 2003).  

            Dale and Don
complain that the agreement on which suit was filed was not pled or
proved.  They claim suit was filed only on the original agreement—the
Club’s rules and regulations drafted in 1992.[6]  It is undisputed that the original agreement
did not include provisions setting forth specific amounts of dues and
fines.  Because the amendments setting
forth specific amounts of yearly dues, fines, and late fees were not introduced
at trial, Dale and Don claim that there was no basis on which the Club could
prove a breach of the agreement.

            The Club
contends the agreement was amended from time to time over the years, in
accordance with provisions allowing for such amendments.[7]  Parten testified that the rules and
regulations are the only contract among the parties, and the Club did not offer
written documentation of the various amendments to the original agreement.  The respective damage awards against Dale and
Don consist of dues, fines, and penalties assessed pursuant to amendments to
the original agreement.  Because the
original agreement did not provide for specific dues, fines, or penalties, Dale
and Don claim that, without pleading or proof of the amendments, the evidence
is insufficient to support a finding of breach.

            “Texas follows a ‘fair notice’ standard for pleading,
which looks to whether the opposing party can ascertain from the pleading the
nature and basic issues of the controversy and what testimony will be
relevant.”  Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 896 (Tex.
2000).  If a petition provides fair and
adequate notice of the facts on which the pleader bases his or her claim, it is
sufficient.  Id. at 897; Jasek v. Tex. Dep’t
of Family & Protective Servs., 348 S.W.3d 523, 530 (Tex. App.—Austin
2011, no pet.).

            The Club’s
first amended petition claims “all the members of the association, including
Dale Leander and Don Leander, agreed to be bound by the by-laws propagated by
the Fin & Feather Club and to contribute their assessments to the continued
operation and preservation of the property belonging to the Club.”  The Club alleged that the by-laws were
breached when Dale and Don failed to share in the joint expenses and
obligations of the Club “including those necessary to preserve the property and
maintain the premises.”[8]  The petition further alleged that, “under
[the by-laws] the Defendants now owe the Fin & Feather Club the sum of
$27,000.00 together with accrued interest as provided for under the agreement.”


            A
party must complain of a pleading “defect, omission or fault . . . either of
form or of substance” by special exception. 
Tex. R. Civ. P. 90.  When a party fails to specially except to
pleadings, those pleadings are construed liberally in favor of the pleader.[9]  Auld,
34 S.W.3d at 897.  “An opposing party
should use special exceptions to identify defects in a pleading so that they
may be cured, if possible, by amendment.” 
Id.

            Because the
amended petition alleged a breach of the parties’ contract and set forth the
claimed resulting damages, it provided fair notice of the facts on which the
Club based its claim—Dale’s and Don’s failure to pay their share of the joint
expenses and obligations of the Club. 
Dale and Don were therefore in a position to ascertain from the petition
the nature and basic issues of the controversy.

            (B)       Amendments to Contract Were Proven by Oral
Testimony

 

            Dale and Don complain that the Club sought and
recovered damages based on amendments to the Club’s rules and regulations that
were not documented in the evidence.[10]  Dale and Don thus contend that the Club
failed to prove those provisions of the agreement, which allegedly support its
damage claims.

            Ken
testified at length about the amendments to the rules and regulations.  His testimony established, among other things,
that (i) the regulations provide for payment of dues and include a mechanism
for changing the amount of dues, (ii) amendment to the regulations must be
accomplished by no less than seventy-five percent of the voting shares of the
Club’s stockholders,[11]
(iii) a $5.00 monthly late fee was enacted by amendment in January 1995, (iv)
in 1997, dues were increased to $50.00 per share,[12]
(v) a chronic nonpayment of dues fine was enacted at the 2003 general meeting, (vi)
a no-show fine for work days was assessed at the rate of $100.00 per day, (vii)
the fine for a violation of the rule against unsupervised guests was assessed
at $500.00 per violation, (viii) special call dues of $400.00 per share were
enacted in 2006, and (ix) property taxes were assessed as a part of Club dues
beginning in 2004.  

            Here, Dale
and Don contend that introduction of the amendments was a necessary
prerequisite to the Club’s recovery of damages. 
Even though Ken’s testimony apparently relates to written documents,[13]
it was admitted without objection.[14]  This testimony likely would have been subject
to the objection that it was not the best evidence of the amendments to the Club
rules and regulations.  There was neither
an objection on that ground, nor an objection that such testimony violated the
parol evidence rule.[15]  The right to demand the best evidence
obtainable of the facts in issue is waived if a party allows secondary evidence
of such facts to be admitted without objection. 
Waiver has thus occurred.[16]  See
New Trends, Inc. v.
Stafford-Lowdon Co., 508 S.W.2d 668 (Tex. App.—Fort Worth 1974, no writ).

            Notwithstanding
Dale’s and Don’s failure to preserve error regarding the admissibility of Ken’s
testimony in the absence of supporting documentation, contract modification may
be proved by direct testimony.  Tillison v. Bailey, No. 06-05-00071-CV, 2006
WL 1445611, at *4 (Tex. App.—Texarkana Mar. 1, 2006, no pet.) (mem. op.).  Where, as here, the power to alter the
by-laws of a club is reserved in the by-laws, and amendments are undertaken
accordingly, the group or club may increase the amount of assessments
payable.  See Winters Mut. Aid Ass’n Circle No. 2 v. Reddin, 49 S.W.2d 1095,
1099–1100 (Tex. Comm’n App. 1932, holding approved).  The amended contract was adequately proven.

            (C)       Sufficient
Evidence Showed Breach of the Amended Contract by Dale and Don

 

            The Club’s
pleading alleges the existence of the contract on which suit was filed; Ken’s
testimony, together with the rules and regulations for the Club’s property,
proves the existence of the contract on which suit was filed.  The next issue we must decide is whether the
Club properly proved Dale and Don, or either of them, failed to comply with the
regulations.  Dale and Don contend that
the evidence is insufficient to support the trial court’s factual findings in
support of the trial court’s conclusion that Dale and Don breached the
contract.[17]

            Findings of
fact “are of the same force and dignity as a jury’s answers to jury questions.”
Lambright v. Trahan, 322
S.W.3d 424, 430 (Tex. App.—Texarkana 2010, pet. denied) (citing Anderson v.
City of Seven Points, 806
S.W.2d 791, 794 (Tex. 1991)).  We review
the findings of fact by the same standards that are applied in reviewing the
legal or factual sufficiency of the evidence supporting a jury’s answer to a
jury question.  Id. (citing Ortiz
v. Jones, 917 S.W.2d 770,
772 (Tex. 1996)). 

            We will
credit evidence favorable to the finding of the trial court if a reasonable
judge acting as a fact-finder could, and will disregard contrary evidence
unless a reasonable judge could not when making this determination.  City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005);
Ramsay v. Tex. Trading Co., 254 S.W.3d 620, 625 (Tex. App.—Texarkana
2008, pet. denied).  We will not substitute
our judgment for the judgment of the trial court when the evidence falls within
the zone of reasonable disagreement.  Ramsay, 254 S.W.3d at 625 (citing Wilson, 168 S.W.3d at 822).  We consider the evidence in a light most
favorable to the challenged findings, and indulge every reasonable inference in
support of those findings.  We may not,
however, disregard evidence that allows only one inference.  Id.

            When considering a factual-sufficiency
challenge to a jury’s verdict, we must consider and weigh all of the evidence,
not just that evidence which supports the trial court’s judgment. Lambright,
322 S.W.3d at 430.  We will set aside the
judgment only if it is so contrary to the overwhelming weight of the evidence
that it is clearly wrong and unjust.  Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406–07 (Tex. 1998).

            Dale and Don claim there is
no evidence, or insufficient evidence, to support the trial court’s factual finding number eight:

Sometime in the 1990s, Dale and Don Leander
ceased to pay their share of the assessments and dues required under the Fin
and Feather Club Lake operating agreement which they had signed and agreed to. 

 

The complaint here is based on the assertion that there was
no evidence that assessments and dues were required under the original
agreement.

            Dale
testified he paid dues and participated in workdays for “a couple of years”
after the 1992 rules and regulations were enacted.  Then, in 1994, the Club, through its trustee,
Claude Julian, deeded three shares in the Club to Ken and Janet.  Dale viewed Ken’s action as a breach of the
agreement.  As a result, Dale stopped
paying club dues.  In 1996, Dale sold his
single share in the Club to his father. 
This share was bequeathed to Don in 1998 when the senior Mr. Leander passed
away.  In 2003, Don deeded both of his
shares to Father and Sons Property, LLC. 
The evidence indicates that neither Dale nor Don paid dues, fines, or
fees of any kind since 1996.  This
evidence is sufficient to support the trial court’s finding that Dale and Don
have not paid Club dues or assessments since sometime in the 1990s.

            Dale and Don
claim, however, that Ken’s testimony relates to dues and assessments payable
under amendments to the original agreement, and because no such amendments were
proved, there is no evidence to support this finding.  For the reasons set forth in the preceding
section of this opinion, we find the evidence sufficient to support the trial
court’s finding of fact number eight.

            Dale and
Don also complain of the trial court’s finding number nine:

 

[Dale’s and Don’s] failure to pay the dues and
other assessments was a breach of the management agreement and suit was filed
on behalf of the [Club] by Kenneth Parten in October, 2006.

 

Dale and Don do not contest the assertion that neither has
paid dues and assessments since 1996. 
Rather, they claim the failure to do so is not a breach of the agreement
because no specific dues or assessments were listed in the original agreement.  It is, therefore, claimed that the foregoing
factual finding is not supported by the evidence.  For the reasons previously set forth herein,
we disagree.  The evidence is sufficient
to support this finding by the trial court.

            Dale and Don
next take issue with factual finding number eleven, “Don Leander transferred
his ownership to Dale Leander on April 5, 2005.”  Dale and Don maintain there was no evidence
of a “sale” by Don to Dale in 2005. 
Instead, they claim the evidence merely shows that Don drafted a deed
transferring his interest (two shares) to Father and Sons Property, LLC, in
2003.  The deed was filed in 2005.  

            A deed does not have to
be recorded to convey title to real property. 
Adams v. First Nat’l Bank of
Bells/Savoy, 154 S.W.3d 859, 869 (Tex. App.—Dallas 2005, no pet.).  A conveyance is effective and title is
conveyed when the deed has been executed and delivered.  Id.

            Dale
testified he transferred his single share in the Club to his father in 1996:

            I
sold out in ‘96. . . .  

 

                        .
. . .

 

            [My
share was transferred] to my father. . .

 

            My
father left it in his will - - when he died - - to my brother.  

 

            [My
father owned the share] two years until he died.  

 

After the death of Dale’s father, the share passed to Dale’s
brother, and was subsequently transferred to Father and Sons Property, LLC:

[I] sold [my share in Fin & Feather Club] to
my father in ‘96.  My father died in ‘98,
so it passed to my brother.  And sometime
in ‘93 [sic], my brother drafted a deed, but I don’t believe he filed it here
at the courthouse until 2005 . . . to convey his two shares to Father and Sons
Property LLC, but I don’t believe he actually filed that document until 2005.

 

            [Currently]
Father and Sons Property LLC, [owns] two shares, and Don zero.

 

            The
foregoing testimony indicates the deed was executed in 2003, but Don filed it
“here at the courthouse” in 2005.  The
fact that Don filed the deed himself would tend to indicate the deed was not
delivered before the time it was filed in 2005. 
While there is no direct testimony indicating when the deed was
delivered, a reasonable fact-finder could conclude that a transfer did not take
place before the deed was filed.  Even
so, the evidence is insufficient to support the trial court’s finding number
eleven, because the undisputed testimony indicates Don conveyed his shares to
Father and Sons Property, LLC, not to Dale.

            Dale and Don
also complain of the trial court’s finding number thirteen, “The total amount
of dues and other fee assessments owed by Dale Leander from April 16, 2005 to
June 23, 2010 is $26,778.00.”  The
criticism of this finding is a claimed absence of evidence that Dale owned any
interest in the Club between April 15, 2005, and June 23, 2010, as he sold his
interest to his father back in 1996.[18]

            The Club
responds that the transfer to Father and Sons Property, LLC, was in violation
of Club regulations and cannot now be used as a defense to the payment of
assessments owed.  This response does not
address the sufficiency of the evidence. 
It is nevertheless the responsibility of this Court to examine the
entire record in order to determine the factual sufficiency of the evidence on
this issue.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

            In examining
the record for evidence that Dale owned an interest in the Club between April 16,
2005, and June 23, 2010, it is apparent that (1) Dale owned one share, which he
transferred to his father in 1996, (2) Don owned one share and inherited Dale’s
former share in 1998, (3) in 2005, Don transferred both shares to Father and
Sons Property, LLC.  During the pertinent
time period, Father and Sons Property, LLC, owned both shares.  The referenced deed conveying Don’s two
shares to Father and Sons Property, LLC, is not a part of the record.  While the Club’s brief describes Father and
Sons Property, LLC, as “Dale’s family corporation,” the evidence at trial
failed to disclose the identity of the principal[s] of Father and Sons
Property, LLC.[19]  We are, however, to look to the entire record
to determine evidentiary sufficiency.  On
doing so, we discover that the partition action, which was consolidated with
the breach of contract case in the court below, and the records of which were
made a part of the record in this appeal, provide evidence of the identity of
at least one of the principals of Father and Sons Property, LLC.

            In September
2010, the trial court ordered the property owned by the Club to be partitioned
in kind.[20]  The order further awarded a one-eighth
interest in the Club property to Dale[21]
and appointed commissioners to determine the partition of the property.  

            The
unchallenged award to Dale of an interest in the Club property is at least some
indication of his interest, as a principal, in Father and Sons Property,
LLC.  After all, if Dale were not a
principal in Father and Sons Property, LLC—the record owner of the two shares
formerly owned individually by Dale and Don, respectively—the trial court would
have no basis to award Dale any interest in the Club property.[22]  Moreover, the Club certainly would have
objected to the entry of such an order, if Dale had no ownership interest in
the property.  Finally, Dale has accepted
the benefit of the trial court’s order and cannot now claim he had no interest
in the Club property during the pertinent time period.

            We,
therefore, find sufficient evidence to support that portion of the trial
court’s finding that Dale breached the contract and therefore owes some amount
of dues and fees based on his ownership interest in the Club from April 16,
2005, through June 23, 2010.  Similarly,
the evidence is sufficient to support that portion of the trial court’s finding
of fact number thirteen that Don breached the contract and, therefore, owes
some amount of dues and fees based on his ownership interest in the Club from
October 13, 2002, until some unidentified date in 2005.[23]  The amounts owed are a different story, as
discussed below.

(2)        Admitting the Damage Summary Was Not
Reversible Error

 

            Next, Dale
and Don complain that the trial court abused its discretion in admitting the
Club’s damage exhibit[24]
over objection.  The exhibit, identified
as a “club shares balance sheet for past dues, fines and fees,” is a listing of
all dues, fines, and fee balances the Club claims were owed by Dale and Don,
respectively, from 1996 through June 2010. 
It contains the notation that 

[S]hareholder balance outstanding is correct
after audit of the overlapping documents since 1992

Trustee Janet Parten

 

Ken testified that his wife, Janet, trustee of the Club,
prepared the document.  Janet was not
present at trial, and the document was offered through Parten as the sponsoring
witness as a summary of voluminous documents and records.  Dale and Don objected on the basis that a
proper predicate was not established and the documents lacked a foundation.

            In reviewing
the trial court’s decision to admit this document, we determine whether the
trial court abused its discretion by ruling without regard for any guiding
rules and principles.  See Owens-Corning Fiberglas Corp. v. Malone,
972 S.W.2d 35, 43 (Tex. 1998).  Should
the record reveal a legitimate basis for the trial court’s ruling, we must
uphold the ruling.  See id.  Moreover, we may not
reverse an evidentiary ruling unless the error probably caused the rendition of
an improper judgment.  See id.; Tex. R. App. P. 44.1(a).

            The
admission of documents that summarize other documents is controlled by Rule
1006 of the Texas Rules of Evidence, which states:

The contents of voluminous writings, recordings,
or photographs, otherwise admissible, which cannot conveniently be examined in
court may be presented in the form of a chart, summary, or calculation.  The originals, or duplicates, shall be made
available for examination or copying, or both, by other parties at a reasonable
time and place.  The court may order that
they be produced in court.

 

Tex. R. Evid.
1006.

 

            In order to
bring a summary within the guidelines of Rule 1006, the sponsoring party must
lay the proper predicate for its admission. 
Aquamarine Assocs. v. Burton Shipyard, Inc., 659 S.W.2d 820, 821 (Tex. 1983).  The offering party has the burden to show
that the underlying documents are admissible, that they are voluminous, and
that they were made available to the opposing party for inspection and use in
cross-examination.  C.M. Asfahl Agency v. Tensor,
Inc., 135 S.W.3d 768, 800 (Tex. App.—Houston [1st Dist.] 2004, no pet.); Welder v. Welder, 794 S.W.2d 420, 429
(Tex. App.—Corpus Christi 1990, no writ).

            Dale and Don
argue that the trial court erred in admitting the damage summary because the
summary was prepared by Janet, but sponsored by Ken.  In addition, they claim the Club failed to
make the underlying documents available for inspection as required by the rule
and that the summary itself was not a business record.

            A proper
foundation for a summary must establish the admissibility of the underlying
documents and the accuracy of the summary. 
Tensor, Inc., 135 S.W.3d at
800.  Although the rule does not require
that the person who prepared a written summary, chart, or other exhibit must
testify, in most cases it would be difficult to authenticate such a summary
without calling as a witness the person responsible for its preparation—in this
case, Janet.

            This case is
in some respects unusual, however, because both Janet and Ken are shareholders
in the Club and both have served as trustee and as assistant trustee at various
times in the past.  Even though Janet
created the document as trustee of the Club, Ken served as assistant trustee at
the time it was prepared and served as trustee during at least a portion of the
time covered by the damage summary. 
Because Ken served as trustee even before the damage summary was
created, he was familiar with the amounts listed.  Ken testified that he reviewed the summary and
that it accurately represents the underlying records.  If believed, the testimony is sufficient to
establish the accuracy of the summary.

            While Dale
and Don complain the summary itself was not shown to be a business record under
Rule 803(6) of the Texas Rules of Evidence,[25]
such a showing is not necessary under Rule 1006.  The rule merely requires the contents of
voluminous writings to be “otherwise admissible.”  Tex.
R. Evid. 1006.

            Here, Ken’s
testimony proved the underlying documents were “otherwise admissible.”  His testimony established that the records
were made at the time the fines were incurred on a semi-annual basis.  While this testimony does not specifically
track the language of the statute, the overall context of the testimony—that
the records were generated at a regular interval, two times a year when the Club
met, that the records were generated at or near the time the fines listed were
incurred, and that Ken was a co-custodian of the records and thus knew the
summary to be a true and accurate representation of the underlying records—is
sufficient to establish the admissibility of the underlying records.

            Finally,
Dale and Don claim the Club failed to make the underlying documents available
for inspection as required by the rule. 
Specifically, the rule requires, “The originals, or duplicates, shall be
made available for examination or copying, or both, by other parties at a
reasonable time and place.  The court may
order that they be produced in court.” 
In this regard, Dale testified that he does not recall ever seeing
anything of the magnitude of exhibit five, but may have received the originals,
or duplicates in the mail and the time they were generated.[26]  Ken testified the late fees and fines were
sent to Dale on a regular basis when they were prepared.   Even though the trial court did not order
the documents to be produced in court, Ken testified, “All of the minutes to
all of the meetings, I’m sure, are here.” 
There is no testimony or evidence to contradict this statement.

            Because all
aspects for admission of the damage summary were complied with under Rule 1006,
the trial court did not abuse its discretion in admitting this exhibit.

(3)        Evidence
Is Insufficient to Support the Amount of the Recoveries Against Dale and Don

 

            Dale and Don
nevertheless contend the evidence does not support the trial court’s damage
findings.  We agree.

            The
evidence is insufficient to support that portion of the trial court’s finding
that Dale owes $26,778.00 to the Club in fees and assessments because
(i) there is no evidence in the record of the identity and ownership
shares of the principals of Father and Sons Property, LLC, and (ii) there
is insufficient evidence of the amounts owed by Dale.

            The evidence
is insufficient to support the finding that Don owes dues and other fee
assessments from October 13, 2002, to April 15, 2005,[27]
in the amount of $10,960.00 because (i) there is no evidence Don
transferred his two shares to Father and Sons Property, LLC, on April 15,
2005, (ii) there is no evidence in the record of the identity and
ownership shares of the principals of Father and Sons Property, LLC, and (iii)
there is insufficient evidence of the amount of damages Don owes in this case.[28]  The evidence indicates Don owned a single
share in the Club from 1992[29]
to 1998,[30] at which time
he became the owner of two shares.  As
previously discussed, Don appears to have transferred his two shares to Father
and Sons Property, LLC, in 2005.[31]

            The
damage summary does not break out separate amounts owed by Dale and by Don
during their respective periods of Club membership, in accordance with the
number of shares owned by each.[32]  In addition, the summary does not purport to
address the issue of share ownership by Father and Sons Property, LLC, and
evidence of that share ownership is lacking in the record.

            Accordingly,
we affirm the judgment with respect to the Club’s breach of contract
claims.  We reverse the award of damages
and remand to the trial court for further proceedings in accordance with this
opinion.

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          November
21, 2011    

Date Decided:             January
11, 2012

 

 

 











[1]The
Club was variously referred to throughout the trial as an association of
landowners, a partnership, and an unincorporated joint stockholding company. 

 





[2]The
Club is actually comprised of sixteen shares. 
In 1992, thirteen of those shares were owned by individuals, and the
remaining three shares were owned by the Club. 
Since 1992, Ken and Janet Parten have purchased the three shares
previously owned by the Club.  

 





[3]The
twelve voting shares present were (1) Dale (one share), (2) Steve Parten (one
share), (3) Ken (four shares), (4) Janet (four shares), (5) Emily Porter
(one share), and (6) Don by letter (one share). 

 





[4]In
1996, Dale sold his interest in the Club to his father, who passed away in
1998.  These shares were inherited by
Don.  These shares were then allegedly
transferred to a Leander family corporation called Father and Sons Property,
LLC, in 2003.  The deed documenting this
transaction was recorded in 2005.  

 





[5]The
lawsuit filed by the Club against Dale and Don was consolidated with trial court
cause number 31,550, styled Kenneth
Parten, Janet Parten, Stephen M. Parten and Claude A. Julian v. Emily Porter,
Dennis Bales, Dale Leander and Don Leander. 
The earlier cause of action, filed in 1995, sought partition of the real
estate situated in Fannin County, known as the Fin & Feather Club.  In September 2010, the trial court ordered
said real property to be partitioned in kind. 
The instant appeal does not involve the partition action.





[6]The
Club initially pled the agreement was also a covenant running with the land,
but abandoned that argument.  

 





[7]Section
1(g) of the agreement provides for the imposition of annual dues:

 

Amounts of annual
dues and their use shall be decided at the annual meeting of shareholders by a
vote of at least 75% of voting shares. 
Special meetings must have 75% of shares present.

 

Section 4(b) provides for
acceptance of the rules and regulations:

 

Acceptance of
these Rules and Regulations will be by no less than 75% of the voting shares in
Fin & Feather Club Lake stockholders and may not be amended without the
same.

 

Section 7(a) and (c) provide
for the imposition of fines:

 

a.  Fines will not be less than $25.00 and not
more than $500.00 to be assessed by the Security Committee.

 

c.  If the person fined does not pay within sixty
(60) days of date levied, or if a stockholder does not pay his annual dues
within sixty (60) days of its due date, the matter shall be subject to further
committee action which may result in the imposition of an additional fine
and/or the suspension of the right to go upon Fin & Feather Club Lake
property for such a period as the Security Committee may direct.  

 





[8]At
trial, the Club offered a copy of the 1992 rules and regulations as an exhibit.

 





[9]While
Dale and Don specially excepted to the Club’s first amended petition, they did
not obtain a ruling on those exceptions. 
Special exceptions that are not called to the trial court’s attention,
and on which the record does not show that the trial court acted, are
waived.  In re Estate of Tyner, 292 S.W.3d 179, 185 (Tex. App.—Tyler 2009,
no pet.).  Because Dale and Don’s special
exceptions have been waived, we analyze the pleadings without reference to
their filing.

 





[10]The
Club’s listing of Dale’s and Don’s dues, fines, and fee balances—offered and
accepted into evidence—includes some explanatory notes of decisions made at
Club meetings, but does not purport to be a reproduction of Club minutes.

 





[11]Ken’s
testimony was specific at times, indicating certain amendments were
accomplished by seventy-five percent of the voting shares of the Club, as
required by the regulations.  At other
times, Ken testified that the amendment was enacted or passed.

 





[12]Club
dues fluctuated, but generally increased over time.  In 2004, dues were increased to $900.00 per
share.  In 2007, dues decreased to
$600.00 per share.  

 





[13]There
is no testimony that the amendments to Club rules and regulations were
documented in writing.

 





[14]This
testimony was given relative to the Club’s damage exhibit, purporting to set
out all fines, dues, and fees owing by Dale and Don from 1996 through
2010.  While Dale and Don objected to the
introduction of the damage exhibit on the basis there was no predicate for its admission,
they did not object to Ken’s testimony regarding amendments to the Club rules
and regulations.

 





[15]Under
the best-evidence rule, “[t]o prove the content of a writing, recording, or
photograph, the original writing, recording, or photograph is required except
as otherwise provided in these rules or by law.”  Tex.
R. Evid. 1002.  The parol evidence
rule bars consideration of extrinsic evidence that contradicts, varies, or adds
to the terms of an unambiguous written agreement.  Gary E.
Patterson & Assocs. v. Holub, 264 S.W.3d 180, 197 (Tex. App.—Houston
[1st Dist.] 2008, pet. denied).

 





[16]Dale
and Don cite no authority saying that failure to introduce such documentation
renders testimony based on it incompetent, rather than making it a credibility
determination for the trier of fact.

 





[17]We
decide this issue apart from the issue of damages.

 





[18]Dale
and Don’s brief on this issue is muddled because it appears to have switched
the names “Dale” and “Don” when discussing the issue of share transfer.  The actual argument espoused in support of
the claim that the trial court’s finding of fact number thirteen is not
supported by the evidence is that “Dale transferred his interest in Fin &
Feather Club to Father & Sons Property, LLC, in 2003.”  The record indicates, however, that Don
transferred his two shares in Fin & Feather to Father & Sons Property,
LLC, in 2003 or 2005.  The record is
devoid of evidence that Dale transferred his share to any person or entity
other than his father.





[19]The
Club’s brief indicates that “Dale Leander was the principal of [Father and Sons
Property] LLC and he has throughout acted as if he personally owned the
property.”  The brief fails to cite
evidence in support of this bare proposition.  


 





[20]The
partition order is not appealed herein.

 





[21]A
seven-eighths interest in the property was awarded to the Club.

 





[22]There
is no evidence in the record of a transfer of share ownership in the Club by
Dale, Don or, Father and Sons Property, LLC, after 2005.  Therefore, if Father and Sons Property, LLC
was the record owner of the two shares in issue in 2005, they retained
ownership of those shares through June 23, 2010.  

 





[23]As
noted in the preceding footnote, there is no evidence of when in 2005 the
transfer of Don’s two shares to Father and Sons Property, LLC, took place.  

 





[24]This
document was identified as plaintiff’s exhibit five at trial.  





[25]Rule
803(6) provides that records of a regularly conducted activity are not excluded
as hearsay.  Such records include:

 

A memorandum, report, record, or
data compilation, in any form, of acts, events, conditions, opinions, or
diagnoses, made at or near the time by, or from information transmitted by, a
person with knowledge, if kept in the course of a regularly conducted business
activity, and if it was the regular practice of that business activity to make
the memorandum, report, record, or data compilation, all as shown by the
testimony of the custodian or other qualified witness, or by affidavit that
complies with Rule 902(10), unless the source of information or the method or
circumstances of preparation indicate lack of trustworthiness.  “Business” as used in this paragraph includes
any and every kind of regular organized activity whether conducted for profit
or not.

 

Tex. R. Evid.
803(6).

 





[26]Specifically,
Dale testified that he “may have received a piece of mail or two, but I don’t
know that I have received anything that looks like this.”  

 





[27]The
beginning date, October 13, 2002, is ostensibly the commencement of the running
of the statute of limitations on the Club’s breach of contract claim, filed in
October 2006.  April 15, 2005, is
ostensibly the date the deed transferring Don’s two shares in the Club to
Father and Sons Property, LLC, was filed. 

 





[28]Note
that Dale and Don’s brief appears to have switched the names “Dale” and “Don”
when discussing the issue of share transfer. 
The actual argument espoused in support of the claim that the trial
court’s finding of fact number twelve is not supported by the evidence is that
“Don Leander did not own an interest in Fin & Feather after 1996.  In 1996, Don Leander transferred his interest
to his father.”  There is no evidence
that Don ever transferred his interest in the Club to his father.

 





[29]Club
meeting minutes dated October 13, 1992, indicate Don owned one share at that
time.  

 





[30]Don
inherited a single share from his father in 1998.  There is no evidence in the record that,
before the inheritance of a single share from his father in 1998, Don sold his
existing share.

 





[31]There
is no evidence in the record of the precise date of the transfer.

 





[32]The
record indicates that Don owes dues, fines, and fees for two shares from
October 13, 2002, through some point in 2005 (when the deed transmitting Don’s
two shares was delivered to Father and Sons Property, LLC).  The record indicates that Dale and/or Father
and Sons Property, LLC, owe dues, fines, and fees for two shares from some
point in 2005 (when Don’s two shares were delivered to Father and Sons Property,
LLC) through June 23, 2010.