

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00135-CV

_____


DALE LEANDER AND DON LEANDER, Appellants

V.

FIN & FEATHER CLUB, AND THROUGH TRUSTEE,
KENNETH PARTEN, Appellees


On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 37293


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Brothers Dale and Don Leander have had a falling out with the Fin & Feather Club, of which they have been members at some point over the last few years and which Club is located on some 162 acres of Fannin County land. After the initial falling out, Dale and Don stopped doing various activities connected with the Club, including payment of various dues and fines, for which the Club ultimately sued them and obtained a judgment against the brothers.

The Club was originally established in 1912. The Club, located in Fannin County, purports to be an unincorporated association of individuals.[1] In October 1992, Club shareholders met to establish rules and regulations concerning the Club's operation. Present at the meeting were owners of twelve of the thirteen ownership "shares" in the Club.[2] Among those present were Dale, who was elected assistant trustee, and Ken, who was elected trustee.[3] Club rules and regulations were adopted and signed by all present.

After the difference of opinion in late 1994, apparently with Ken, Dale resigned his position as assistant trustee. After Dale's resignation, both Dale and Don allegedly ceased to pay

---

[1]The Club was variously referred to throughout the trial as an association of landowners, a partnership, and an unincorporated joint stockholding company.

[2]The Club is actually comprised of sixteen shares. In 1992, thirteen of those shares were owned by individuals, and the remaining three shares were owned by the Club. Since 1992, Ken and Janet Parten have purchased the three shares previously owned by the Club.

[3]The twelve voting shares present were (1) Dale (one share), (2) Steve Parten (one share), (3) Ken (four shares), (4) Janet (four shares), (5) Emily Porter (one share), and (6) Don by letter (one share).

2

Club dues or further participate in Club affairs.[4]  As a result, the Club, through its trustee, filed a lawsuit against Dale and Don to collect dues, late fees, "special call" dues, "no show" fines for work days, and fines for "chronic non pay dues/rules."  After a purportedly abbreviated bench trial, judgment was rendered against Dale in the amount of $26,778.00 and against Don in the amount of $10,960.00.[5]

In eight points of error, Dale and Don assert on appeal that the evidence is factually and legally insufficient to support the findings that Dale and Don breached the agreement, that admitting into evidence the Club's damage summary exhibit was reversible error, and that the evidence is factually and legally insufficient to support the amount of the damage finding against Dale and Don.  We affirm in part, but reverse the damage award and remand to the trial court for further proceedings, based on our holdings that (1) breach of contract by Dale and Don was adequately established, (2) admitting the damage summary was not reversible error, and (3) evidence is insufficient to support the amount of the recoveries against Dale and Don.

---

[4]In 1996, Dale sold his interest in the Club to his father, who passed away in 1998.  These shares were inherited by Don.  These shares were then allegedly transferred to a Leander family corporation called Father and Sons Property, LLC, in 2003.  The deed documenting this transaction was recorded in 2005.

[5]The lawsuit filed by the Club against Dale and Don was consolidated with trial court cause number 31,550, styled *Kenneth Parten, Janet Parten, Stephen M. Parten and Claude A. Julian v. Emily Porter, Dennis Bales, Dale Leander and Don Leander*.  The earlier cause of action, filed in 1995, sought partition of the real estate situated in Fannin County, known as the Fin & Feather Club.  In September 2010, the trial court ordered said real property to be partitioned in kind.  The instant appeal does not involve the partition action.

*(1)     Breach of Contract by Dale and Don Was Adequately Established*

Using various approaches, Dale and Don attack the finding that they breached the contract among the Club's owners.   Dale and Don contend (i) the agreement on which pleadings were filed fails to support the trial court's finding of breach or damages, (ii) the evidence is insufficient to establish a breach of contract, (iii) Dale and Don did not own any interest in the Club during the time period for which the trial court awarded damages, (iv) there is no evidence, or insufficient evidence, to support the trial court's findings of fact regarding Dale's alleged breach, and (v) there is no evidence, or insufficient evidence, to support the trial court's findings of fact regarding Don's alleged breach.

Our overall holding that breach of contract was adequately established is supported by these intermediate holdings:   (A) the action for breach of contract was sufficiently pled, (B) amendments to the contract were proven by oral testimony, and (C) sufficient evidence showed breach of the amended contract by Dale and Don.

*(A)     The Action for Breach of Contract Was Sufficiently Pled*

To establish a breach of contract, a party must present evidence of the existence of a valid contract, the party's compliance with the terms of the contract, a breach of the contract by the defendant, and damages to the plaintiff resulting from the breach.   *Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 615 (Tex. App.—Texarkana 2002, pet. denied).   Appellate review of the trial court's construction of an unambiguous agreement is de novo.   *J. M. Davidson*, *Inc. v. Webster*,

4

128 S.W.3d 223, 229 (Tex. 2003).

Dale and Don complain that the agreement on which suit was filed was not pled or proved. They claim suit was filed *only* on the original agreement—the Club's rules and regulations drafted in 1992.[6] It is undisputed that the original agreement did not include provisions setting forth specific amounts of dues and fines. Because the amendments setting forth specific amounts of yearly dues, fines, and late fees were not introduced at trial, Dale and Don claim that there was no basis on which the Club could prove a breach of the agreement.

The Club contends the agreement was amended from time to time over the years, in accordance with provisions allowing for such amendments.[7] Parten testified that the rules and

---

[6]The Club initially pled the agreement was also a covenant running with the land, but abandoned that argument.

[7]Section 1(g) of the agreement provides for the imposition of annual dues:

> Amounts of annual dues and their use shall be decided at the annual meeting of shareholders by a vote of at least 75% of voting shares. Special meetings must have 75% of shares present.

Section 4(b) provides for acceptance of the rules and regulations:

> Acceptance of these Rules and Regulations will be by no less than 75% of the voting shares in Fin & Feather Club Lake stockholders and may not be amended without the same.

Section 7(a) and (c) provide for the imposition of fines:

> a. Fines will not be less than $25.00 and not more than $500.00 to be assessed by the Security Committee.

> c. If the person fined does not pay within sixty (60) days of date levied, or if a stockholder does not pay his annual dues within sixty (60) days of its due date, the matter shall be subject to further committee action which may result in the imposition of an additional fine and/or the suspension of the right to go upon Fin & Feather Club Lake property for such a period as the Security Committee may direct.

regulations are the only contract among the parties, and the Club did not offer written documentation of the various amendments to the original agreement. The respective damage awards against Dale and Don consist of dues, fines, and penalties assessed pursuant to amendments to the original agreement. Because the original agreement did not provide for specific dues, fines, or penalties, Dale and Don claim that, without pleading or proof of the amendments, the evidence is insufficient to support a finding of breach.

"Texas follows a 'fair notice' standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). If a petition provides fair and adequate notice of the facts on which the pleader bases his or her claim, it is sufficient. *Id.* at 897; *Jasek v. Tex. Dep't of Family & Protective Servs.*, 348 S.W.3d 523, 530 (Tex. App.—Austin 2011, no pet.).

The Club's first amended petition claims "all the members of the association, including Dale Leander and Don Leander, agreed to be bound by the by-laws propagated by the Fin & Feather Club and to contribute their assessments to the continued operation and preservation of the property belonging to the Club." The Club alleged that the by-laws were breached when Dale and Don failed to share in the joint expenses and obligations of the Club "including those necessary to preserve the property and maintain the premises."[8] The petition further alleged that, "under [the

---

[8]At trial, the Club offered a copy of the 1992 rules and regulations as an exhibit.

by-laws] the Defendants now owe the Fin & Feather Club the sum of $27,000.00 together with accrued interest as provided for under the agreement."

A party must complain of a pleading "defect, omission or fault . . . either of form or of substance" by special exception. TEX. R. CIV. P. 90. When a party fails to specially except to pleadings, those pleadings are construed liberally in favor of the pleader.[9] *Auld*, 34 S.W.3d at 897. "An opposing party should use special exceptions to identify defects in a pleading so that they may be cured, if possible, by amendment." *Id.*

Because the amended petition alleged a breach of the parties' contract and set forth the claimed resulting damages, it provided fair notice of the facts on which the Club based its claim—Dale's and Don's failure to pay their share of the joint expenses and obligations of the Club. Dale and Don were therefore in a position to ascertain from the petition the nature and basic issues of the controversy.

*(B)     Amendments to Contract Were Proven by Oral Testimony*

Dale and Don complain that the Club sought and recovered damages based on amendments to the Club's rules and regulations that were not documented in the evidence.[10] Dale and Don

---

[9]While Dale and Don specially excepted to the Club's first amended petition, they did not obtain a ruling on those exceptions. Special exceptions that are not called to the trial court's attention, and on which the record does not show that the trial court acted, are waived. *In re Estate of Tyner*, 292 S.W.3d 179, 185 (Tex. App.—Tyler 2009, no pet.). Because Dale and Don's special exceptions have been waived, we analyze the pleadings without reference to their filing.

[10]The Club's listing of Dale's and Don's dues, fines, and fee balances—offered and accepted into evidence—includes some explanatory notes of decisions made at Club meetings, but does not purport to be a reproduction of Club minutes.

7

thus contend that the Club failed to prove those provisions of the agreement, which allegedly support its damage claims.

Ken testified at length about the amendments to the rules and regulations. His testimony established, among other things, that (i) the regulations provide for payment of dues and include a mechanism for changing the amount of dues, (ii) amendment to the regulations must be accomplished by no less than seventy-five percent of the voting shares of the Club's stockholders,[11] (iii) a $5.00 monthly late fee was enacted by amendment in January 1995, (iv) in 1997, dues were increased to $50.00 per share,[12] (v) a chronic nonpayment of dues fine was enacted at the 2003 general meeting, (vi) a no-show fine for work days was assessed at the rate of $100.00 per day, (vii) the fine for a violation of the rule against unsupervised guests was assessed at $500.00 per violation, (viii) special call dues of $400.00 per share were enacted in 2006, and (ix) property taxes were assessed as a part of Club dues beginning in 2004.

Here, Dale and Don contend that introduction of the amendments was a necessary prerequisite to the Club's recovery of damages. Even though Ken's testimony apparently relates to written documents,[13] it was admitted without objection.[14] This testimony likely would have

---

[11]Ken's testimony was specific at times, indicating certain amendments were accomplished by seventy-five percent of the voting shares of the Club, as required by the regulations. At other times, Ken testified that the amendment have enacted or passed.

[12]Club dues fluctuated, but generally increased over time. In 2004, dues were increased to $900.00 per share. In 2007, dues decreased to $600.00 per share.

[13]There is no testimony that the amendments to Club rules and regulations were documented in writing.

8

been subject to the objection that it was not the best evidence of the amendments to the Club rules and regulations. There was neither an objection on that ground, nor an objection that such testimony violated the parol evidence rule.[15] The right to demand the best evidence obtainable of the facts in issue is waived if a party allows secondary evidence of such facts to be admitted without objection. Waiver has thus occurred.[16] *See New Trends*, *Inc. v. Stafford-Lowdon Co.*, 508 S.W.2d 668 (Tex. App.—Fort Worth 1974, no writ).

Notwithstanding Dale's and Don's failure to preserve error regarding the admissibility of Ken's testimony in the absence of supporting documentation, contract modification may be proved by direct testimony. *Tillison v. Bailey*, No. 06-05-00071-CV, 2006 WL 1445611, at \*4 (Tex. App.—Texarkana Mar. 1, 2006, no pet.) (mem. op.). Where, as here, the power to alter the by-laws of a club is reserved in the by-laws, and amendments are undertaken accordingly, the group or club may increase the amount of assessments payable. *See Winters Mut. Aid Ass'n Circle No. 2 v. Reddin*, 49 S.W.2d 1095, 1099–1100 (Tex. Comm'n App. 1932, holding

---

[14]This testimony was given relative to the Club's damage exhibit, purporting to set out all fines, dues, and fees owing by Dale and Don from 1996 through 2010. While Dale and Don objected to the introduction of the damage exhibit on the basis there was no predicate for its admission, they did not object to Ken's testimony regarding amendments to the Club rules and regulations.

[15]Under the best-evidence rule, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except as otherwise provided in these rules or by law." TEX. R. EVID. 1002. The parol evidence rule bars consideration of extrinsic evidence that contradicts, varies, or adds to the terms of an unambiguous written agreement. *Gary E. Patterson & Assocs. v. Holub*, 264 S.W.3d 180, 197 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

[16]Dale and Don cite no authority saying that failure to introduce such documentation renders testimony based on it incompetent, rather than making it a credibility determination for the trier of fact.

approved).   The amended contract was adequately proven.

*(C)     Sufficient Evidence Showed Breach of the Amended Contract by Dale and Don*

The Club's pleading alleges the existence of the contract on which suit was filed; Ken's testimony, together with the rules and regulations for the Club's property, proves the existence of the contract on which suit was filed.   The next issue we must decide is whether the Club properly proved Dale and Don, or either of them, failed to comply with the regulations.   Dale and Don contend that the evidence is insufficient to support the trial court's factual findings in support of the trial court's conclusion that Dale and Don breached the contract.[17]

Findings of fact "are of the same force and dignity as a jury's answers to jury questions." *Lambright v. Trahan*, 322 S.W.3d 424, 430 (Tex. App.—Texarkana 2010, pet. denied) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)).   We review the findings of fact by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question.   *Id.* (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996)).

We will credit evidence favorable to the finding of the trial court if a reasonable judge acting as a fact-finder could, and will disregard contrary evidence unless a reasonable judge could not when making this determination.   *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Ramsay v. Tex. Trading Co.*, 254 S.W.3d 620, 625 (Tex. App.—Texarkana 2008, pet. denied).

---

[17]We decide this issue apart from the issue of damages.

10

We will not substitute our judgment for the judgment of the trial court when the evidence falls within the zone of reasonable disagreement. *Ramsay*, 254 S.W.3d at 625 (citing *Wilson*, 168 S.W.3d at 822). We consider the evidence in a light most favorable to the challenged findings, and indulge every reasonable inference in support of those findings. We may not, however, disregard evidence that allows only one inference. *Id.*

When considering a factual-sufficiency challenge to a jury's verdict, we must consider and weigh all of the evidence, not just that evidence which supports the trial court's judgment. *Lambright*, 322 S.W.3d at 430. We will set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998).

Dale and Don claim there is no evidence, or insufficient evidence, to support the trial court's factual finding number eight:

> Sometime in the 1990s, Dale and Don Leander ceased to pay their share of the assessments and dues required under the Fin and Feather Club Lake operating agreement which they had signed and agreed to.

The complaint here is based on the assertion that there was no evidence that assessments and dues were required under the original agreement.

Dale testified he paid dues and participated in workdays for "a couple of years" after the 1992 rules and regulations were enacted. Then, in 1994, the Club, through its trustee, Claude Julian, deeded three shares in the Club to Ken and Janet. Dale viewed Ken's action as a breach of

11

the agreement. As a result, Dale stopped paying club dues. In 1996, Dale sold his single share in the Club to his father. This share was bequeathed to Don in 1998 when the senior Mr. Leander passed away. In 2003, Don deeded both of his shares to Father and Sons Property, LLC. The evidence indicates that neither Dale nor Don paid dues, fines, or fees of any kind since 1996. This evidence is sufficient to support the trial court's finding that Dale and Don have not paid Club dues or assessments since sometime in the 1990s.

Dale and Don claim, however, that Ken's testimony relates to dues and assessments payable under amendments to the original agreement, and because no such amendments were proved, there is no evidence to support this finding. For the reasons set forth in the preceding section of this opinion, we find the evidence sufficient to support the trial court's finding of fact number eight.

Dale and Don also complain of the trial court's finding number nine:

[Dale's and Don's] failure to pay the dues and other assessments was a breach of the management agreement and suit was filed on behalf of the [Club] by Kenneth Parten in October, 2006.

Dale and Don do not contest the assertion that neither has paid dues and assessments since 1996. Rather, they claim the failure to do so is not a breach of the agreement because no specific dues or assessments were listed in the original agreement. It is, therefore, claimed that the foregoing factual finding is not supported by the evidence. For the reasons previously set forth herein, we disagree. The evidence is sufficient to support this finding by the trial court.

12

Dale and Don next take issue with factual finding number eleven, "Don Leander transferred his ownership to Dale Leander on April 5, 2005." Dale and Don maintain there was no evidence of a "sale" by Don to Dale in 2005. Instead, they claim the evidence merely shows that Don drafted a deed transferring his interest (two shares) to Father and Sons Property, LLC, in 2003. The deed was filed in 2005.

A deed does not have to be recorded to convey title to real property. *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 869 (Tex. App.—Dallas 2005, no pet.). A conveyance is effective and title is conveyed when the deed has been executed and delivered. *Id.*

Dale testified he transferred his single share in the Club to his father in 1996:

> I sold out in '96. . . .
>
> . . . .
>
> [My share was transferred] to my father. . .
>
> My father left it in his will - - when he died - - to my brother.
>
> [My father owned the share] two years until he died.

After the death of Dale's father, the share passed to Dale's brother, and was subsequently transferred to Father and Sons Property, LLC:

> [I] sold [my share in Fin & Feather Club] to my father in '96. My father died in '98, so it passed to my brother. And sometime in '93 [sic], my brother drafted a deed, but I don't believe he filed it here at the courthouse until 2005 . . . to convey his two shares to Father and Sons Property LLC, but I don't believe he actually filed that document until 2005.

13

[Currently] Father and Sons Property LLC, [owns] two shares, and Don zero.

The foregoing testimony indicates the deed was executed in 2003, but Don filed it "here at the courthouse" in 2005. The fact that Don filed the deed himself would tend to indicate the deed was not delivered before the time it was filed in 2005. While there is no direct testimony indicating when the deed was delivered, a reasonable fact-finder could conclude that a transfer did not take place before the deed was filed. Even so, the evidence is insufficient to support the trial court's finding number eleven, because the undisputed testimony indicates Don conveyed his shares to Father and Sons Property, LLC, not to Dale.

Dale and Don also complain of the trial court's finding number thirteen, "The total amount of dues and other fee assessments owed by Dale Leander from April 16, 2005 to June 23, 2010 is $26,778.00." The criticism of this finding is a claimed absence of evidence that Dale owned any interest in the Club between April 15, 2005, and June 23, 2010, as he sold his interest to his father back in 1996.[18]

The Club responds that the transfer to Father and Sons Property, LLC, was in violation of Club regulations and cannot now be used as a defense to the payment of assessments owed. This response does not address the sufficiency of the evidence. It is nevertheless the responsibility of

---

[18]Dale and Don's brief on this issue is muddled because it appears to have switched the names "Dale" and "Don" when discussing the issue of share transfer. The actual argument espoused in support of the claim that the trial court's finding of fact number thirteen is not supported by the evidence is that "Dale transferred his interest in Fin & Feather Club to Father & Sons Property, LLC, in 2003." The record indicates, however, that Don transferred his two shares in Fin & Feather to Father & Sons Property, LLC, in 2003 or 2005. The record is devoid of evidence that Dale transferred his share to any person or entity other than his father.

14

this Court to examine the entire record in order to determine the factual sufficiency of the evidence on this issue. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

In examining the record for evidence that Dale owned an interest in the Club between April 16, 2005, and June 23, 2010, it is apparent that (1) Dale owned one share, which he transferred to his father in 1996, (2) Don owned one share and inherited Dale's former share in 1998, (3) in 2005, Don transferred both shares to Father and Sons Property, LLC. During the pertinent time period, Father and Sons Property, LLC, owned both shares. The referenced deed conveying Don's two shares to Father and Sons Property, LLC, is not a part of the record. While the Club's brief describes Father and Sons Property, LLC, as "Dale's family corporation," the evidence at trial failed to disclose the identity of the principal[s] of Father and Sons Property, LLC.[19] We are, however, to look to the entire record to determine evidentiary sufficiency. On doing so, we discover that the partition action, which was consolidated with the breach of contract case in the court below, and the records of which were made a part of the record in this appeal, provide evidence of the identity of at least one of the principals of Father and Sons Property, LLC.

In September 2010, the trial court ordered the property owned by the Club to be partitioned in kind.[20] The order further awarded a one-eighth interest in the Club property to Dale[21] and

---

[19]The Club's brief indicates that "Dale Leander was the principal of [Father and Sons Property] LLC and he has throughout acted as if he personally owned the property." The brief fails to cite evidence in support of this bare proposition.

[20]The partition order is not appealed herein.

[21]A seven-eighths interest in the property was awarded to the Club.

appointed commissioners to determine the partition of the property.

The unchallenged award to Dale of an interest in the Club property is at least some indication of his interest, as a principal, in Father and Sons Property, LLC. After all, if Dale were not a principal in Father and Sons Property, LLC—the record owner of the two shares formerly owned individually by Dale and Don, respectively—the trial court would have no basis to award Dale any interest in the Club property.[22] Moreover, the Club certainly would have objected to the entry of such an order, if Dale had no ownership interest in the property. Finally, Dale has accepted the benefit of the trial court's order and cannot now claim he had no interest in the Club property during the pertinent time period.

We, therefore, find sufficient evidence to support that portion of the trial court's finding that Dale breached the contract and therefore owes some amount of dues and fees based on his ownership interest in the Club from April 16, 2005, through June 23, 2010. Similarly, the evidence is sufficient to support that portion of the trial court's finding of fact number thirteen that Don breached the contract and, therefore, owes some amount of dues and fees based on his ownership interest in the Club from October 13, 2002, until some unidentified date in 2005.[23] The amounts owed are a different story, as discussed below.

---

[22]There is no evidence in the record of a transfer of share ownership in the Club by Dale, Don or, Father and Sons Property, LLC, after 2005. Therefore, if Father and Sons Property, LLC was the record owner of the two shares in issue in 2005, they retained ownership of those shares through June 23, 2010.

[23]As noted in the preceding footnote, there is no evidence of when in 2005 the transfer of Don's two shares to Father and Sons Property, LLC, took place.

16

*(2)     Admitting the Damage Summary Was Not Reversible Error*

Next, Dale and Don complain that the trial court abused its discretion in admitting the Club's damage exhibit[24] over objection.  The exhibit, identified as a "club shares balance sheet for past dues, fines and fees," is a listing of all dues, fines, and fee balances the Club claims were owed by Dale and Don, respectively, from 1996 through June 2010.  It contains the notation that

> [S]hareholder balance outstanding is correct after audit of the overlapping
> documents since 1992
> Trustee Janet Parten

Ken testified that his wife, Janet, trustee of the Club, prepared the document.  Janet was not present at trial, and the document was offered through Parten as the sponsoring witness as a summary of voluminous documents and records.  Dale and Don objected on the basis that a proper predicate was not established and the documents lacked a foundation.

In reviewing the trial court's decision to admit this document, we determine whether the trial court abused its discretion by ruling without regard for any guiding rules and principles.  *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).  Should the record reveal a legitimate basis for the trial court's ruling, we must uphold the ruling.  *See id.* Moreover, we may not reverse an evidentiary ruling unless the error probably caused the rendition of an improper judgment.  *See id.*; TEX. R. APP. P. 44.1(a).

The admission of documents that summarize other documents is controlled by Rule 1006 of the Texas Rules of Evidence, which states:

---

[24]This document was identified as plaintiff's exhibit five at trial.

17

> The contents of voluminous writings, recordings, or photographs, otherwise admissible, which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

TEX. R. EVID. 1006.

In order to bring a summary within the guidelines of Rule 1006, the sponsoring party must lay the proper predicate for its admission. *Aquamarine Assocs. v. Burton Shipyard*, *Inc.*, 659 S.W.2d 820, 821 (Tex. 1983). The offering party has the burden to show that the underlying documents are admissible, that they are voluminous, and that they were made available to the opposing party for inspection and use in cross-examination. *C.M. Asfahl Agency v. Tensor*, *Inc.*, 135 S.W.3d 768, 800 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Welder v. Welder*, 794 S.W.2d 420, 429 (Tex. App.—Corpus Christi 1990, no writ).

Dale and Don argue that the trial court erred in admitting the damage summary because the summary was prepared by Janet, but sponsored by Ken. In addition, they claim the Club failed to make the underlying documents available for inspection as required by the rule and that the summary itself was not a business record.

A proper foundation for a summary must establish the admissibility of the underlying documents and the accuracy of the summary. *Tensor, Inc.*, 135 S.W.3d at 800. Although the rule does not require that the person who prepared a written summary, chart, or other exhibit must testify, in most cases it would be difficult to authenticate such a summary without calling as a

18

witness the person responsible for its preparation—in this case, Janet.

This case is in some respects unusual, however, because both Janet and Ken are shareholders in the Club and both have served as trustee and as assistant trustee at various times in the past. Even though Janet created the document as trustee of the Club, Ken served as assistant trustee at the time it was prepared and served as trustee during at least a portion of the time covered by the damage summary. Because Ken served as trustee even before the damage summary was created, he was familiar with the amounts listed. Ken testified that he reviewed the summary and that it accurately represents the underlying records. If believed, the testimony is sufficient to establish the accuracy of the summary.

While Dale and Don complain the summary itself was not shown to be a business record under Rule 803(6) of the Texas Rules of Evidence,[25] such a showing is not necessary under Rule 1006. The rule merely requires the contents of voluminous writings to be "otherwise admissible." TEX. R. EVID. 1006.

---

[25]Rule 803(6) provides that records of a regularly conducted activity are not excluded as hearsay. Such records include:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

TEX. R. EVID. 803(6).

19

Here, Ken's testimony proved the underlying documents were "otherwise admissible." His testimony established that the records were made at the time the fines were incurred on a semi-annual basis. While this testimony does not specifically track the language of the statute, the overall context of the testimony—that the records were generated at a regular interval, two times a year when the Club met, that the records were generated at or near the time the fines listed were incurred, and that Ken was a co-custodian of the records and thus knew the summary to be a true and accurate representation of the underlying records—is sufficient to establish the admissibility of the underlying records.

Finally, Dale and Don claim the Club failed to make the underlying documents available for inspection as required by the rule. Specifically, the rule requires, "The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court." In this regard, Dale testified that he does not recall ever seeing anything of the magnitude of exhibit five, but may have received the originals, or duplicates in the mail and the time they were generated.[26] Ken testified the late fees and fines were sent to Dale on a regular basis when they were prepared. Even though the trial court did not order the documents to be produced in court, Ken testified, "All of the minutes to all of the meetings, I'm sure, are here." There is no testimony or evidence to contradict this statement.

[26]Specifically, Dale testified that he "may have received a piece of mail or two, but I don't know that I have received anything that looks like this."

20

Because all aspects for admission of the damage summary were complied with under Rule 1006, the trial court did not abuse its discretion in admitting this exhibit.

*(3)*      *Evidence Is Insufficient to Support the Amount of the Recoveries Against Dale and Don*

Dale and Don nevertheless contend the evidence does not support the trial court's damage findings. We agree.

The evidence is insufficient to support that portion of the trial court's finding that Dale owes $26,778.00 to the Club in fees and assessments because (i) there is no evidence in the record of the identity and ownership shares of the principals of Father and Sons Property, LLC, and (ii) there is insufficient evidence of the amounts owed by Dale.

The evidence is insufficient to support the finding that Don owes dues and other fee assessments from October 13, 2002, to April 15, 2005,[27] in the amount of $10,960.00 because (i) there is no evidence Don transferred his two shares to Father and Sons Property, LLC, on April 15, 2005, (ii) there is no evidence in the record of the identity and ownership shares of the principals of Father and Sons Property, LLC, and (iii) there is insufficient evidence of the amount of damages Don owes in this case.[28] The evidence indicates Don owned a single share in the Club

---

[27]The beginning date, October 13, 2002, is ostensibly the commencement of the running of the statute of limitations on the Club's breach of contract claim, filed in October 2006. April 15, 2005, is ostensibly the date the deed transferring Don's two shares in the Club to Father and Sons Property, LLC, was filed.

[28]Note that Dale and Don's brief appears to have switched the names "Dale" and "Don" when discussing the issue of share transfer. The actual argument espoused in support of the claim that the trial court's finding of fact number twelve is not supported by the evidence is that "Don Leander did not own an interest in Fin & Feather after 1996. In 1996, Don Leander transferred his interest to his father." There is no evidence that Don ever transferred his interest in the Club to his father.

21

from 1992[29] to 1998,[30] at which time he became the owner of two shares. As previously discussed, Don appears to have transferred his two shares to Father and Sons Property, LLC, in 2005.[31]

The damage summary does not break out separate amounts owed by Dale and by Don during their respective periods of Club membership, in accordance with the number of shares owned by each.[32] In addition, the summary does not purport to address the issue of share ownership by Father and Sons Property, LLC, and evidence of that share ownership is lacking in the record.

Accordingly, we affirm the judgment with respect to the Club's breach of contract claims. We reverse the award of damages and remand to the trial court for further proceedings in accordance with this opinion.

> Josh R. Morriss, III
> Chief Justice

Date Submitted: November 21, 2011

---

[29]Club meeting minutes dated October 13, 1992, indicate Don owned one share at that time.

[30]Don inherited a single share from his father in 1998. There is no evidence in the record that, before the inheritance of a single share from his father in 1998, Don sold his existing share.

[31]There is no evidence in the record of the precise date of the transfer.

[32]The record indicates that Don owes dues, fines, and fees for two shares from October 13, 2002, through some point in 2005 (when the deed transmitting Don's two shares was delivered to Father and Sons Property, LLC). The record indicates that Dale and/or Father and Sons Property, LLC, owe dues, fines, and fees for two shares from some point in 2005 (when Don's two shares were delivered to Father and Sons Property, LLC) through June 23, 2010.

Date Decided:        January 11, 2012